(No. 22161.—)

THE PEOPLE *ex rel.* Joseph B. McDonough, County Collector, Appellee, *vs.* SOL H. GOLDBERG, Appellant.

*Opinion filed December 22, 1933.*

ROBERT McCORMICK ADAMS, (BURKE WILLIAMSON, and PAUL S. DAVIS, of counsel,) for appellant.

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, ROBERT S. CUSHMAN, JACOB SHAMBERG, and LOUIS H. GEIMAN, of counsel,) for appellee.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

In the county court of Cook county, where he filed objections to the application of the county collector for tax judgment and order of sale against his property for the year 1930, appellant, Sol H. Goldberg, unsuccessfully challenged the action of the board of review in refusing to reduce his land assessment. The principal errors assigned and relied upon in this appeal are that the trial court excluded certain competent evidence offered in behalf of appellant and admitted improper evidence in favor of the People.

The property involved is located at the southeast corner of State and Lake streets, in Chicago, with a frontage of 109 feet on State street and a depth of 68 feet on Lake street. For the year 1930 the board of assessors placed a full valuation on this property of $1,509,304, of which $1,396,060 was for the land and $113,244 for the improvements. Following the established practice of the assessors, the assessed valuations were fixed at thirty-seven per cent of the full valuations on the property, and were $516,543 for the land and $41,901 for the building. The method of computation of these values is shown on the so-called property record cards used by the board of assessors. The land valuation of $1,396,060 was reached by taking a unit price of $14,500 as a unit front foot for State street and applying a certain depth factor. To the figure reached in this way was added an amount for corner influence based upon the front foot value on Lake street. The appellant filed with the board of review a complaint against the assessment for the taxable year beginning April 1, 1930.

At the hearing before Charles V. Barrett, one of the members of the board of review, the building valuation was reduced but no action was taken as to the land valuation. Whether appellant offered any evidence as to his land valuation is a disputed question. Appellant contends that Barrett stated that the board of review had neither the time, patience nor inclination to listen to or consider land evidence and that the board would go into it on its own initiative. On the other hand, appellee insists that no such offer was made, since the official assessors' minutes of the hearing before Barrett are entirely silent as to any offer of evidence about the value of appellant's land.

The objection filed by appellant in the county court alleged that the board of review had failed and refused to hear and consider evidence relating to the land assessment, which he claimed to be excessive. At the hearing in the county court appellant introduced evidence concerning the land value in question. Three witnesses for appellant testified that it was worth about $100 per square foot. One witness for appellee testified that in his opinion the fair cash market value of the land as of April 1, 1928, was $1,509,304, the valuation placed thereon by the board of assessors; that there was a long-term lease on the property made in December, 1928, with an annual rental of $80,000, which, capitalized at five per cent, represents a value of $1,600,000; that some of the leases in the loop district in Chicago, including the school board leases, are capitalized at four per cent; that capitalizing the lease on appellant's property at four per cent would produce a valuation of $2,000,000, and that his opinion of value was based upon his general knowledge of conditions and upon the lease. It was shown by one of the witnesses for appellant that the lease on appellant's property was for ninety-nine years, with an initial rental of $80,000 a year, with upward gradation at five and ten-year intervals to a maximum of $130,000 a year, but the evidence also showed that

the lease was subsequently reduced from $80,000 to $50,000 per year.

The gist of appellant's objection in the county court was that his real estate had been assessed at an excessive amount and that the board of review fraudulently confirmed the assessment. It was there stipulated that the People had made a *prima facie* case and the burden therefore fell upon appellant to show fraud, as the presumption is that his taxes are just and that all of the assessing officials have acted honestly and lawfully. This presumption can only be overcome by clear and explicit testimony. (*People* v. *Millard,* 307 Ill. 556; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 290 id. 327.) No claim was made by appellant that his land had been fraudulently assessed, as it was shown to have been assessed in accordance with the rules contained in the Assessors' Manual, prepared under rules of the State Tax Commission, but appellant chiefly contended in the court below that the refusal of the board of review to hear and consider evidence of the value of his land constituted fraud, which gave the county court jurisdiction to review the assessment and determine the fair valuation of his property. In support of his position appellant cites and relies upon the holding of this court in *People* v. *Stewart,* 315 Ill. 25. There certain tax-payers appeared before the board of review for hearings on their complaints and were referred to a committee of experts, with the information "that what the committee did would be confirmed by the board of review." The tax-payers attempted to introduce evidence of other sales in the same block in which their property was located, but the committee decided that such evidence was not material, and the board of review confirmed the assessment. Thereafter objections by the tax-payers to the collector's application for judgment and order of sale were filed in the county court. The People rested entirely upon their *prima facie* case and offered no evidence whatever. The

lower court entered judgment of sale, which was reversed in this court because "there was not only an entire absence of proof to sustain the assessment, but the evidence shows an over-valuation so excessive as, taken in connection with the other circumstances in the case, requires the conclusion that it did not arise from error in the exercise of honest judgment but was arbitrarily and intentionally made. From such an assessment the courts will give relief."

From the above review it is apparent that the *Stewart case* and the case at bar are clearly distinguishable on the facts. Here it is at least doubtful whether appellant offered any evidence before Barrett concerning the value of his land, as the assessors' minutes introduced in evidence show nothing in that regard. No objection was made by appellant that any advantage was taken of him by reason of the hearing before Barrett rather than before the entire board of review. The facts here do not show an excessive over-valuation "arbitrarily and intentionally made." On the contrary, the valuation placed upon appellant's land was made in accordance with the usual practice followed in such cases and supported with proof of rental values, which under conditions then existing clearly import an absence of fraud or abuse of discretion. While two witnesses testified for appellant that Barrett refused to consider any land value evidence, yet the county judge had the transcript of the board of review proceedings before him, which showed that appellant did not offer any evidence of the value of his land before the board of review. Under these circumstances it is difficult to believe that the board of review acted fraudulently in confirming his assessment by refusing to hear evidence as to the value of his real estate.

Even if appellant, as he claimed, was refused a hearing before the board of review it was his duty to demand and secure such a hearing by *mandamus* rather than seek relief by revision of his assessment in the county court. To this effect we held in *Lowenthal* v. *People*, 192 Ill. 222:

"The board of review, and not the courts, are invested with the power to estimate the value of assessable property, and he should have sought the aid of the courts, not to estimate the value of his property but to command the board of review to perform that duty." This court again announced the same principle in *People* v. *Cesar,* 349 Ill. 372, where we held that a tax-payer must compel the board of review to hear a complaint before he has any standing to object to the collector's application for judgment and order of sale. Under these authorities the county court manifestly had no authority to inquire into the fairness of appellant's assessment, even if, as he contended, the board of review had improperly refused to hear his evidence of land values. The charge of a fraudulent confirmation of his assessment by the board of review was therefore properly overruled in the county court.

We have examined the testimony admitted and refused by the county court with relation to the errors assigned by appellant and fail to find any prejudicial error in that regard. The record shows that the three expert witnesses who testified in behalf of appellant were allowed to state fully their opinions as to the value of the land and also concerning what happened at the hearing before Barrett. The qualifications of all three witnesses were admitted by the People. The record shows that the examination of these witnesses was not curtailed except as to their testimony concerning comparative values of other properties, which the court properly held immaterial, as it was not first shown that the other lands mentioned were similar in location and character. (*Forest Preserve District* v. *Collins,* 348 Ill. 477.) Mere proximity is not enough. *Chicago North Shore and Milwaukee Railroad Co.* v. *Title and Trust Co.* 328 Ill. 610.

The objection made to the testimony of the only witness for the People goes more to the weight to be given to his testimony than to his right to testify. We have held

that the question of market value of land is not a question of art or science, which can only be shown by the testimony of experts, but that it is a question of fact to be proved the same as any other fact, and that any person who is acquainted with the land is competent to testify as to its value. (*Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.) The question of qualifications of witnesses to testify as to the value of property rests very largely in the discretion of the trial court. (*City of Geneseo* v. *Schultz,* 257 Ill. 273.) It is not the rule in this State that no witnesses can be examined on the question of property values unless they have been engaged in buying and selling the species of property under investigation, but, on the contrary, any person may testify in such cases who knows the property and its value for the uses and purposes to which it is being put. (*Mauvaisterre Drainage District* v. *Wabash Railway Co.* 299 Ill. 299.) These authorities, and many others which might be cited to the same effect, show that the county court did not err in the admission of the testimony to which appellant objected.

It is further contended by appellant that the capitalized value of rent from the lease offered no proper basis for an opinion as to the value of the real estate. It is true that this should not furnish the only measure, but it is proper to take it into consideration in ascertaining land values. The testimony here objected to was not based entirely upon rental values but was also based upon the witness' general knowledge. The admission of testimony on property values based upon the value of such property for renting purposes has been recognized and held proper in several previous decisions of this court. *City of Chicago* v. *Lord,* 276 Ill. 544; *Chicago and Northwestern Railway Co.* v. *Mechanics' Institute,* 239 id. 197.

The judgment of the county court of Cook county is therefore affirmed.

*Judgment affirmed.*