(No. 37779.—

E. B. URANN *et al.*, Appellants, *vs.* THE VILLAGE OF HINS-DALE, Appellee.

*Opinion filed January 22, 1964.*

LYLE H. ROSSITER, of Chicago, for appellants.

H. WILLIAMS and JOHN N. KERN, both of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal, duly certified to us by the trial judge, (Ill. Rev. Stat. 1961, chap. 110, par. 75(1)(c),), is from a judgment of the circuit court of Du Page County upholding the validity of the zoning ordinance of the village of Hinsdale insofar as it applies to certain lots owned by the plaintiffs. As grounds for reversal, it is contended that the single-family residence classification of plaintiffs' properties is unreasonable, arbitrary and unrelated to the public health, safety, welfare or morals; that the ordinance is invalid as a whole because it prohibits the use of land for apartment purposes; and that a provision of the ordinance relating to special use permits in areas classified as "Planned Development Districts" is unconstitutional as being in violation of due process of law. However, as the record comes to us, it is only the first of these contentions which need be, or properly may be, considered.

Involved are 32 separate lots, totalling 2.8 acres, 10 of which are situated in one block, 13 of which are situated in a second block, and 9 of which are situated in still a third block. Viewed in their aggregate, the 32 lots form an irregularly-shaped rectangle bounded on the north by Hinsdale Avenue, on the west by Bodin Street, on the south partly by an alley and partly by Second Street, (Second Street coming to a dead end near the alley entrance,) and on the east by a line drawn through the center of the block from Second Street to Hinsdale Avenue. The rectangle is bisected in two places by Monroe and Thurlow streets, both of which run north and south, although it appears that Thurlow Street has never been opened or improved at this point. The other streets involved, however, all have water mains, sewer lines and street paving. All of the lots are zoned for single-family residence purposes, and the area is a part of an extensive single-family residence district which extends to the west, south and east. The main line of the Chicago, Burlington and Quincy Railroad parallels Hins-

dale Avenue on the north, and to the north of the avenue and the railroad, partially across from the rectangle, is a small area zoned for both commercial and industrial uses. Whether any or all of the 32 lots are vacant or improved does not clearly appear, but it is our impression from the testimony of the witnesses that they are vacant.

Ownership of the lots is in the plaintiffs, Ellerton D. Urann and John Birch, either in their own names or as beneficiaries of a land trust. Most were acquired by Urann, who started purchasing them a few at a time subsequent to a 1957 zoning ordinance which classified them for single-family residence purposes. This plaintiff had been in the business of buying, improving and selling vacant real estate for 20 years, and at the trial of this cause plans for apartment buildings proposed to be built on the premises were introduced into evidence. Birch, on the other hand, purchased a part of his lots in October, 1959, and the remainder after this proceeding was underway. He did not become a party to the suit until the morning of the trial and neither appeared nor testified. Originally, four other lot owners joined in the complaint after signing an agreement with Urann that he would bear the expense of the trial. They also neither appeared nor testified, nor have they joined in this appeal. While the cause was pending a comprehensive revision of the zoning ordinance was made; however, the zoning classification of plaintiffs' lots and that of the immediately surrounding area remained the same.

To the west of plaintiffs' property on the south side of Hinsdale Avenue is a block containing five single-family residences, each having a value ranging from $14,000 to $18,000. To the east along Hinsdale Avenue, all of older construction, there are in order: a residence, a house with a barn, a house with a carpenter shop, two single-family residences, a small grocery store, and a two-family residence. The carpenter shop, store and the two-family residence are all legal nonconforming uses. To the south of

plaintiffs' property are single-family residences of newer construction ranging in value from $20,000 to $40,000. In the small industrial and commercial area to the north, across Hinsdale Avenue and the elevated bed of the railroad track, we discern from photographs introduced in evidence but not otherwise interpreted or explained, a small coal yard, a garage with two or three stalls and one, or possibly two, small warehouses or storage buildings. The area itself, we note, is surrounded by residence properties.

Urann and two expert witnesses who appeared in plaintiffs' behalf testified that the highest and best use of the property in question was for business or apartments, basing their opinions largely upon the presence of the railroad tracks and the industrial area to the north, which they said would not be as detrimental to apartments as to homes, and upon the fact there had been but comparatively little new residential building along the south side of Hinsdale Avenue in recent years. The same witnesses testified that the property would have a value of $70,000 to $80,000 if used for apartment purposes, whereas the value would be approximately $25,000 if the single-family residence classification is enforced. The price paid for each of the plaintiffs' lots does not appear, but Urann did testify that two of them had cost him about $1,000 apiece. An expert for defendant testified that the highest and best use of the properties was for single-family residence purposes, and stated that their use for apartment purposes would bring congestion to the area and decrease the value of surrounding residences. As opposed to the latter factor, plaintiffs' witness testified that an apartment use would not have a depreciatory effect.

There is a presumption of validity in favor of a zoning ordinance adopted pursuant to a legislative grant and one who attacks such an ordinance has the burden of overcoming the presumption with clear and convincing proof that the ordinance is arbitrary and unreasonable, and is with-

out substantial relation to the public health, safety, morals and welfare. (*Westfield* v. *City of Chicago,* 26 Ill.2d 526; *Krom* v. *City of Elmhurst,* 8 Ill.2d 104.) Whether a zoning classification bears a substantial relation to the public welfare depends upon a number of factors, among them being the character of the neighborhood and the suitability of the property for the zoned purpose, (*Hartung* v. *Village of Skokie,* 22 Ill.2d 485,) and it is plaintiffs' contention that the presence of the railroad tracks and the industrial area to the north makes the classification of their property unreasonable and renders it unsuitable for single-family residential purposes.

When all of the evidence is considered, it is our opinion that the plaintiffs' proof fails to overcome the presumption of validity but shows at best a situation where room exists for a difference of opinion concerning the reasonableness of the single-family residence classification, in which case the legislative judgment must be conclusive. (*Williams* v. *Village of Schiller Park,* 9 Ill.2d 596; *Exchange Nat. Bank of Chicago* v. *County of Cook,* 25 Il.2d 434.) The plaintiffs' property is surrounded on three sides by an extensive single-family residence district, and the predominant use of neighboring lots complies with that classification. Indeed, it may be said that by their purchases of lots plaintiffs have carved out a substantial portion of a single-family resident district which they now seek to rezone. And while some of the residences to the east along Hinsdale Avenue are not of new construction, that fact does not exclude them from the protection of zoning laws. (*Eckhardt* v. *City of Des Plaines,* 13 Ill.2d 562.) The railroad tracks and the industrial area to the north do not in themselves fix the character of plaintiffs' property, or cause its classification to be unreasonable, (*Kennedy* v. *City of Chicago,* 11 Ill.2d 302; *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162,) and, as situated, the railroad tracks present a logical line of demarcation between the industrial zone and the residential zone in

which the plaintiffs' property lies. It is axiomatic that the fixing of zoning boundary lines, unless arbitrary and capricious, is a matter of legislative judgment which the courts will respect, (*Bolger* v. *Village of Mount Prospect*, 10 Ill.2d 596; *DeBartolo* v. *Village of Oak Park*, 396 Ill. 404,) and we see no capriciousness or unreasonableness in this case.

On the further question whether the railroad and the industrial area renders plaintiffs' lots unfit for single-family residence use, we think it highly debatable whether such a result obtains, or whether the influence of their presence would be any different if an apartment use were permitted, and believe in this case that the legislative judgment should prevail. Moreover, the presence of single-family residences facing the railroad on nearby properties detracts somewhat from this claim, as does the fact that the small industrial or commercial area is itself all but enveloped by residence properties.

Plaintiffs also argue that the substantial decrease in the value of their property arising from the present classification results in a hardship which is not offset by a substantial public need or gain, and contend that this factor establishes the invalidity of the ordinance as it applies to their property. (*Columbus Park Congregation of Jehovah's Witnesses, Inc.* v. *Board of Appeals*, 25 Ill.2d 65; *Atkins* v. *County of Cook*, 18 Ill.2d 287.) While it is true the degree to which values are diminished by the restrictions of a zoning ordinance is always proper to consider in determining the reasonableness of the regulation, such factor is not conclusive, (*River Forest State Bank and Trust Co.* v. *Village of Maywood*, 23 Ill.2d 560; *People ex rel. Alco Deree Co.* v. *City of Chicago*, 2 Ill.2d 350,) and is not a decisive factor in this case. Other persons living in the single-family residence district involved have a right to rely upon the precept that the classification will not be changed within the district unless the change is required for the public good, (*Wesemann* v. *Village of La Grange Park*,

407 Ill. 81,) and there is credible evidence here that the use of plaintiffs' property for apartments will depreciate the value of nearby residences and create congestions the single-family residence classification was designed to prevent. Plaintiffs, on the other hand, purchased their lots, presumably at residential prices, with a full awareness of their restricted zoning, (*Vedovell* v. *City of Northlake, 22 Ill.2d 611; Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162,) no changes have occurred in either the general character or existing uses in the neighborhood since plaintiffs acquired their lots, (*Cosmopolitan Nat. Bank of Chicago* v. *City of Chicago, 27* Ill.2d 578,) and there is no showing that their property cannot be profitably developed on a single-family dwelling basis. Cf. *Standard State Bank* v. *Village of Oak Lawn,* No. 37849, adopted November Term, 1963.

As we noted at the beginning, plaintiffs also contend here that the zoning ordinance is invalid because it "prohibits apartments," and that a provision relating to special use permits in areas classified as "Planned Development Districts" is unconstitutional. Neither issue, however, was raised by the pleadings or ruled upon in the judgment from which the appeal has been taken and they are therefore not properly before us for review. Moreover, under the decisions of this court which establish that a person attacking the validity of an ordinance must show that he has sustained, or is in the immediate danger of sustaining, some direct injury as the result of its enforcement, (see: *Clark Oil and Refining Corp.* v. *City of Evanston, 23* Ill.2d 48, 49, and cases there cited,) it is clear that plaintiffs have no standing to raise either issue. The first is based on a theory that an acreage requirement of 6 acres for an apartment use results in the prohibition of apartments in the village, and with our decision that plaintiffs' lots are validly restricted to single-family residence use the validity and effect of the acreage requirement as to their land becomes moot. As to

the second issue, plaintiffs' lots are not in a "Planned Development District," nor are they subject to the special use permit, with the result that plaintiffs are neither injured nor put in danger of injury by the ordinance provision of which they complain.

The judgment of the circuit court of Du Page County was correct, and it is affirmed.

*Judgment affirmed.*