Albert E. Manger, Richard A. Manger, and Flora Manger, His Wife, and LaSalle National Bank of Chicago, a National Banking Association, as Trustee Under Trust No. 34959, Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, Defendant-Appellant, Beverly Ridge Home Owners Association, a Corporation, Intervening Defendant-Appellant.

Gen. No. 53,344.

First District, Fourth Division.

March 11, 1970.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellant.

Edward R. Gustafson, of Chicago, for intervening defendant-appellant.

Haskins, Maguire and Haskins, of Chicago (Robert E. Haskins and C. W. Eckert, of counsel), for appellees.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiffs brought an action for a Declaratory Judgment to declare invalid and to restrain the enforcement

of the zoning ordinance as it classified plaintiffs' property R–1 and a portion B4–2 and to permit the use of the property for the erection of a six-story, 57 foot high structure consisting of fifty residential units in compliance with the requisites of an R–4 zoning classification. Beverly Ridge Home Owners Association, a corporation not for profit, was permitted to intervene as defendant. A judgment was entered granting the relief sought and defendants appeal from that judgment and contend that plaintiff failed to establish by clear and affirmative evidence that the Zoning Ordinances were arbitrary and unreasonable as applied to the subject property.

The subject property is vacant and unimproved and is located on the west side of Wood Street between 95th and 96th Streets in the city of Chicago. It consists of six lots, with a frontage of 294 feet on Wood Street and a railroad and has depth of 180 feet consisting of approximately 52,920 square feet. The zoning classification of the north 65 feet is B4–2, Restricted Service District, and the remaining south portion of approximately 230 feet is in a district zoned R–1, Single-Family Residence. Directly east across Wood Street from the subject property is an R–4 district, more than ½ of which is devoted to the Vanderpoel Public School building and its playground facilities. The remainder of the R–4 zone consists of approximately 68,000 square feet upon which there is a 24-unit apartment building at the northeast corner of 95th Place and a 22-unit townhouse structure at the southeast corner with the remaining structures being single-family residences.

The south side of 95th Street which abuts the north boundary of the property is classified B4–2, Restricted Service District, and covers the south side of 95th from Wood Street to Longwood Drive, the street immediately west of Wood. This strip on 95th is improved with three stores. The remainder of the square block within which the subject property is located, bounded by 95th on the

north and 96th on the south, is zoned R–1, Single-Family Residence, and improved solely with single-family residences. The entire adjacent area, approximately one mile west of Wood Street and extending south approximately one mile, except for the south side of 95th Street, is zoned either R–1 or R–2 and contains uses in conformity with the R–1 and R–2 classifications, with the exception of one nonconforming use at 99th and Wood four blocks south of the subject property which is in an area zoned B2–1.

The property fronts to the east on Wood Street and the tracks of the suburban line of the Rock Island Railroad extend down the middle of the street. Wood Street east of the tracks is paved and is used by only northbound traffic, Wood Street on the west side of the tracks is an unimproved road 100 feet south from 95th Street. If improved, it would only reach 96th Street because the Chicago Park District, Ridge Park, precludes any extension. The area adjoining the subject property on the west and south is from 15 to 20 feet higher than the subject property.

Testimony of JOHN TOWNSEND, called by plaintiffs:

He lives at 11650 Longwood Drive and has been an architect for 36 years and has a financial interest in the property. He has designed many residences and office buildings on Western Avenue and apartments on 103rd Street. He identified various exhibits which were admitted into evidence depicting a plat of survey, building plans and sketches. The purchase price of the property, including legal fees, was $100,000 and if the property were developed under R–1, its value would be only $15,000. The property was purchased in anticipation that it could be used as R–4.

The property was purchased a year before the suit was filed and plaintiffs took a calculated risk in real estate speculation in paying $100,000 knowing the true value to be $15,000. Plaintiffs purchased two contiguous

361

pieces of real estate to create the present subject property. The north 60-foot parcel was zoned B4–2 while the other parcel was zoned R–1. There would be no problems about traffic congestion in putting in a driveway for a 67-car parking lot. There are no alleys around any part of the subject property and various services, such as garbage disposal, would be handled through the front of the property. It is anticipated that there would be ingress from 95th Street and egress at 96th, but the street department would have to resolve that question. Except for the R–4 across the railroad tracks from the subject property, the general area is R–1 and R–2.

The single-family homes which abut the property to the west are almost all 3-story buildings and the height of the proposed structure because of the topography would be as low as these homes.

JOHN McNAMARA, called by plaintiffs:

He has been a real estate broker and appraiser for 41 years, having an office at 9046 S. Ashland and is familiar with the property. He has appeared as a witness on zoning matters on behalf of the city of Chicago and County of Cook and has testified as to evaluation and also as to the highest and the best use of property in reference to zoning. He has represented both plaintiffs and defendants and is qualified as an expert.

The property was examined and a series of photographs made and the witness identified them and relied upon them to assist him in testifying.

The 95th Street frontage is what is known as stripped business district facing north and south on 95th Street. It is a B4–2 zone where the property is located. West of the property on Longwood Drive there are seven single-family dwellings, one is brick and six are frame. On the south side of 96th there are two brick residences with their garages bounding the subject property's south boundary (on the plat of survey the brick residences and garages are shown to be on the north side

of 96th). The property is covered with brush and scrub trees. There are single-family houses facing south along the north side of 95th Place between Vanderpoel and Wood. If the south part of the property was developed single-family, it would be worth $15,000 to $25,000. The proposed development would enhance the value of the abutting property and would not have a depreciatory effect on the surrounding area.

It would be difficult to value the subject property under R-1 zoning since it has been dormant so long, it is difficult to visualize it as single-family because it is 15 to 20 feet below the grade of Longwood Drive and faces the railroad tracks and you could not get anyone to purchase this property and live there. The homes west of the property on Longwood Drive sell in the $30,000, $20,000 bracket. The proposed R-4 development would not depreciate the value of the surrounding homes, because there is over 100 feet between the buildings and the rear of the subject property.

The first multiple dwelling north of the property on the west side of the tracks would be in the vicinity of 90th Street. South of the property and west of the tracks there is an apartment development at 99th and the tracks and R-4 and R-5 developments from 99th to 107th Street. The structure at 99th could be a nonconforming use.

GEORGE W. KEMP, JR., called by plaintiffs:

Is a realtor at 750 E. 71st Street, and is President of McKey and Poague, Inc., and has been in the real estate business for 29 years. He is a member of the Chicago Real Estate Board, and was once its President and has on many occasions testified on behalf of applicants and respondents before courts and associations. He lives a half mile from the property and maintains offices in that area and is well qualified and knowledgeable regarding the subject property and its surroundings.

363

The zoning map in evidence shows that the public park, Ridge Park, starts on the south side of 96th Street, which is approximately 250 feet from the south line of the property. Ridge Park also runs along the west side of the railroad.

The highest and best use of the subject property is to be improved with an apartment development such as the one that has been proposed by plaintiffs. It is the type of housing needed to support the neighborhood. People, who no longer have a need to maintain a large single-family residence, move into these multiple dwellings and are able to remain in the neighborhood. The proposed development would enhance the community and surrounding property values. As a real estate expert, it is recommended that a change be made from R–1 to R–4. Mr. Townsend has not made any commitment that the witness manage the property if it is built, but he would certainly like to manage it, and does manage other property owned by Mr. Townsend. Many people have sold their homes in Beverly Hills and have moved into apartments at 103rd Street and if the development goes in, the value and market price of the surrounding homes on Longwood Drive would be "stronger or strong as now."

MORGAN FITCH, called by intervenors:

He has been residing at 9531 Longwood Drive for 28 years and has been a realtor for 46 years in the area south of 63rd Street out to the city limits and suburbs. His company has sold, financed and managed property and some has been located in the Beverly Hills area of Chicago. He has done appraisal work and is a member of the Chicago Real Estate Board and was its president.

North of 95th Place east of the tracks there is a two-story building erected in 1940 which consists of 22 townhouses; in general it has been a credit to the community. It has a street on 3 sides and an alley on one side.

South of 95th Place there is a two-story garden apartment building with 24 apartments having streets on 3 sides. The proposed building would have a deleterious and harmful effect on the properties in the immediate area and in the surrounding area as well. This will spread throughout Chicago and will undermine the basic principle of zoning which is meant to keep communities in the context of which they are established. It will end residential values in Chicago and reduce values of the property abutting on Longwood Drive and on 96th Street. The development would create congestion in a section not intended to accommodate an intense population. He did not know that part of the property was zoned B4-2.

Four residents of the immediate area of the property testified on behalf of the intervenors and express their disapproval and objections to the development proposed by plaintiffs, because of increased traffic, danger to children, drastic change in type of neighborhood and the size and height of the proposed building would be detracting to the neighborhood. It would also interfere with privacy, light and air.

CARL L. GARDNER, called by intervenors:

He is a city planning consultant since 1953 and holds a Master's degree in city planning from Harvard University. He has testified many times in matters relating to zoning. In his testimony he also relied upon the exhibits in evidence consisting of maps, surveys, plans, drawings and photographs.

The proposed building is not the highest and best use of the subject property and would not be in accord with the present land use patterns of the area. It would be 57 feet above street level and this would be approximately 12 feet above the structures on Longwood Drive to the west. The proposed building would be 45 feet above the grade level of the homes to the west. The location of the property makes vehicle access difficult.

Wood Street has a railroad track down the center and that leaves 27½ feet of public way on each side, including the sidewalk and curb, which results in a very narrow road of about 18 to 20 feet. If the west side of Wood Street were improved, it would be a one-way street southbound to 96th Street, where it stops because of Ridge Park. Vehicle accessibility is further restricted to 17 feet at 95th and Wood by the railroad gate expansion at that intersection.

There is no reason why the subject property cannot be developed R–1 except for the 60-foot north portion which is B4–2. It could be developed with a half dozen detached single-family homes that meet the zoning requirement. This is substantiated by the fact there have been a number of new homes built along the railroad since World War II. Intervenors' exhibits consisting of photographs and charts were also introduced into evidence and referred to in this witness' testimony.

The witness is very familiar with the area largely through working with the planning department of the city of Chicago and has personally visited the instant property and surrounding areas. The property does not take its character from the business development on its north edge. The 80-foot wide street with the double railroad tracks running down the middle is a logical line of demarcation between the R–4 east of the tracks and the R–1 west thereof. The proposed building is an overpowering structure and being 57 feet high cannot help but cut off light and air and change the character of the area. The site does not lend itself to a multifamily structure.

ROBERT E. DWYER, called by defendant:

He is a real estate broker and appraiser and has appraised property for banks, loan associations, attorneys and estates and has testified many times in the courts. He visited the property and has been in the area 25

366

to 30 times and is familiar with the surrounding area. In his opinion the single-family homes on 96th Street abutting the subject property are valued in the $25,000 bracket. It is his further opinion that the highest and best use of the south portion of the subject property is for single-family homes. The character of the neighborhood is single-family homes. The best and highest use of the north 60 feet is its present classification of B4–2. Single-family unit residences at the site would give a minimal traffic use on the narrow street abutting the railroad tracks. The erection of the proposed development would depreciate the surrounding single-family homes by about 20%.

OPINION
■ Defendant contends that the plaintiffs failed to establish that the zoning classification of the subject property was arbitrary and confiscatory. A presumption exists in favor of the validity of a zoning ordinance and the one challenging its validity has the burden of overcoming this presumption by clear and convincing evidence. Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 194 NE2d 201 (1963); Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96 (1962); and Menolascino v. Village of Franklin Park, 106 Ill App2d 472, 246 NE2d 122 (1969).
■ In determining the validity of a zoning classification, the question of whether or not it is in conformity with surrounding existing uses and the zoning classification of nearby property is considered of paramount importance. First Nat. Bank v. County of Lake, 7 Ill2d 213, 130 NE2d 267 (1955) and American Oil Co. v. County of DuPage, 58 Ill App2d 48, 206 NE2d 510 (1965). A particular piece of property may acquire the characteristics of the surrounding property and thereby invalidate the zoning classification of the subject property. People ex rel. Chicago Title & Trust Co.

v. Reiter, 25 Ill2d 41, 182 NE2d 680 (1962). Plaintiffs contend that the subject property takes its character from the two multifamily structures in the R–4 zone that is across the tracks, east of the subject property. We do not agree. Initially, we point out that plaintiffs' own witness Townsend testified that the general area is zoned R–1 and R–2. The record shows that for almost a mile west and south the properties are zoned for single-family units, with the exception of a nonconforming use at 99th and Walton Parkway which consists of a 9-unit structure in a B2–1 zone. In addition, the railroad tracks are an appropriate dividing line between the two zoning classifications. A street or alley has been held to be an appropriate dividing line. LaSalle Nat. Bank v. Village of Skokie, 26 Ill2d 143, 186 NE2d 46 (1962). We hold that the subject property takes its character from the exclusively single-family areas which are to the south and west.

Another compelling reason for this view is that the subject property lacks the streets and alley necessary to properly afford egress and ingress. Trucks servicing the proposed building, together with automobiles of the residents and visitors, would not only affect adversely the traffic situation on Wood Street, but, in finding their way out from the subject property, would also increase greatly the traffic on 96th Street, Longwood Drive, and perhaps other nearby single-family residence streets.

The existence of a narrow one-way street in front of the subject property is more compatible for single-family units. The R–4 across the tracks is vastly dissimilar in this regard because it affords an alley and ample street accessibility that is necessary to absorb the density of traffic generated by a high density structure as proposed by plaintiffs.

Plaintiff also contends that the zoning classification is unreasonable because it does not promote the

public welfare. A zoning classification is presumed to be designed to promote the general welfare. Bullock v. City of Evanston, 5 Ill2d 22, 123 NE2d 840 (1954). The evidence failed to overcome this presumption. Plaintiffs purchased the two parcels comprising the subject property with full knowledge of its zoning restrictions. While a party who purchases property in the face of the existing zoning classifications is not precluded from challenging the validity of the zoning classification, his purchase in the face of the existing zoning classification is one factor to be considered. American Nat. Bank & Trust Co. v. City of Chicago, 30 Ill2d 251, 195 NE2d 627 (1964). Plaintiffs admit that they purchased the two parcels comprising the subject property with the intention of endeavoring to secure a change of zoning classification and described their plans as a "calculated risk" in paying $100,000 for what they knew to be the then true value of $15,000.

Plaintiffs also contend that the property has remained vacant because it is improperly zoned.

This contention is generally advanced in zoning litigation where the property has lain vacant and under appropriate facts and circumstances it can be afforded some merit. Vacant property is often permitted to remain undeveloped in anticipation that a rezoning will enhance its value and thus there is no inclination to sell or develop it as zoned. It is significant that no evidence was adduced to show that efforts had been made to sell the subject property for single-family residences. People v. Village of River Grove, 68 Ill App2d 383, 216 NE2d 218 (1966) and Reeve v. Village of Glenview, 29 Ill2d 611, 195 NE2d 188 (1964).

Plaintiffs urge that we should take judicial notice that in the city of Chicago most of the single-family residences that abut railroad tracks are shabby, of inferior quality and are not properly maintained, and that any single-family construction upon the subject property

369

would be of inferior quality and would seriously impair rather than improve the area. We do not agree. We note that the exhibits and photographs depict the single-family homes abutting the railroad tracks in the area as being substantial and well maintained.

In the case at bar a change of zoning would permit an encroachment of a multifamily use under R–4 upon an otherwise solid and stable residential area and could then, with equal reason, be relied upon in the future as justification for additional R–4 rezoning of the contiguous R–1 and R–2 parcels.

We also find that the court erred in awarding plaintiff an R–4 classification of the subject property and permitting erection of a six-story, 50-unit apartment building which would rise 57 feet above grade. This is certainly a drastic alteration and incongruous modification of an area consisting primarily of single-family residences. The determination of a zoning classification is a legislative rather than a judicial function, and where there is a legitimate difference of opinion concerning the reasonableness of the classification, or where the question of reasonableness is fairly debatable, the courts will not and cannot interfere with legislative judgment, nor carve out and rezone a portion of a tract of land. Bredberg v. City of Wheaton, 24 Ill2d 612, 182 NE2d 742 (1962). We therefore reverse the judgment.

Judgment reversed.

DRUCKER and ENGLISH, JJ., concur.