STANLEY A. TARALA *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF WHEELING *et al.*, Defendants-Appellees.

(No. 59442;

First District (4th Division)—December 20, 1974.

Burke and Burke, of Chicago (John M. Burke, of counsel), for appellants.

Jack M. Siegel, of Chicago, for Village of Wheeling.

John M. Daley, of Chicago, for Victor Smigel.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs brought this action seeking a declaratory judgment that two zoning ordinances adopted by the Village of Wheeling were null and void. The ordinances in question rezoned certain property from R-1 single-family residential to R-4 multiple-family. Following a bench trial before the Honorable Robert J. Downing, the ordinances were declared to be valid. As grounds for reversal, plaintiffs contend that the trial

court's decision was against the manifest weight of the evidence; that the trial court abused its discretion in failing to make a decision for almost 3 months and in allowing a defendant to reopen the case and file an amended answer; that the trial court erred in refusing to allow certain plaintiffs' testimony as to the value of the property; and that the trial court erred in refusing to allow certain rebuttal testimony. We affirm.

Plaintiffs are property owners residing in a portion of the Village of Wheeling that was affected by the ordinances in question. There are three defendants: The Village of Wheeling; Victor Smigel, a real estate developer and the contract purchaser of certain lots within the rezoned area who had commenced construction of multiple-family structures pursuant to the ordinance; and the Wheeling Trust and Savings Bank, the legal title holder of the rezoned lots.

The validity of two ordinances adopted by the Village of Wheeling is involved in this controversy. Ordinance No. 1182, adopted on April 17, 1972, reclassified 47 lots in Zelosky's Subdivision from the R-1 to the R-4 classification. Ordinance No. 1243, adopted on April 2, 1973, during the pendency of this action, reclassified the remaining lots in the subdivision for multiple-family purposes.

The exact boundaries of the area are described differently by the parties; according to the plaintiffs, its boundaries are "Wheeling Road on the west, 6th Street on the east, Mayer Road on the north, and one block south of Strong on the south"; according to the defendants, "[t]he subdivision lies generally between Wolf Road on the east and Wheeling Road on the west and north and south of Strong Street."

Strong Street is the only east-west thoroughfare in the subdivision, and the north-south streets are mostly unimproved. There is vacant property to the north and west of the area which has not been developed. A school district and single-family homes are located to the south of the subdivision. An apartment building is located on the southeast boundary, and there are two factory buildings to the southwest of the subdivision.

The area in question, approximately 55 acres, has been subdivided since 1925. It was annexed by the Village in 1970 subject to an R-1 zoning classification. About 30 percent of its 140 lots have been developed, and the average size of the lots owned by plaintiffs is approximately 13,000 square feet. All of the present homes are on wells and septic fields, and there is no public sewer and water.

The 1972 ordinance rezoned 47 lots in this area to R-4 multiple-family residential. The lots in question were scattered through the subdivision and were owned by one person, Douglas Cargill, prior to being placed in trust with the Wheeling Trust and Savings Bank. Victor Smigel, the

contract purchaser of the lots, proposed to develop each of the 47 lots with six-flat units of 2½ stories in height.

The evidence presented at trial may be summarized as follows. William Lawrence, a professional city planning and zoning consultant, was the first witness to be called by the plaintiffs. Lawrence testified that the highest and best use of the subject property would be realized with an R-3 zoning classification allowing the development of single-family homes on lots of 8,500 square feet. He based his opinion on the character of the existing neighborhood: residential areas platted and developed; a quiet neighborhood that had been entirely single-family and untraversed by heavy traffic. Because the R-4 classification would increase the intensity of use, Lawrence stated that it would have an adverse effect upon the living environment of single-family homes. The witness further testified that the implementation of Smigel's proposal, six-unit multiple-family units on each lot with off-street parking, would have a serious adverse effect upon the continued development of the area as a single-family neighborhood.

Lawrence's testimony during cross-examination revealed that there were several manufacturing uses to the south, west and north of the subject area. He explained that the R-3 classification would be the highest and best use of the property provided that sewer and water requirements were met. The witness further testified that the proposal of defendant Smigel was "unreasonable because it introduces a greatly intensified use into a single-family area." It was also brought out that Lawrence had testified three times in the Village of Wheeling in favor of putting multiple-family dwellings next to single-family structures in a planned development.

Plaintiff's next witness was Maynard F. Rupp, a professional consulting planner, who testified that he had been employed to prepare a plan with the State of Illinois for the Village of Wheeling. Rupp's final report, delivered in 1965 and based upon the 1960 census, recommended a high-density single-family residential area between 6th Street and Wheeling Road, one block north and one block south of Strong. His definition of high density was "anything other than a twenty thousand area foot lot up to a multi-family."

William Sychowski, a plaintiff in this cause, testified that he purchased his house in 1969 at a cost of $22,000. The witness stated that he knew the area was zoned for single-family dwellings when he bought his home and objected to the rezoning because it would change the character of the neighborhood. The court sustained objections to Sychowski's testimony regarding the costs of improvements to his home and its pres-

ent value. The witness admitted that his house is located about four or five lots away from a factory building.

Maureen Pitt, another plaintiff in this cause, testified that she objected to the rezoning because it would change the area where single-family homes are located. She was then asked about the effect that the rezoning would have on the value of her home. Defendants' counsel objected on the ground that the witness was not qualified to give an opinion as to values, and the court sustained the objection. Mrs. Pitt also testified that there are single-family homes adjacent to the Capri apartments to the west, east, south, and directly across the north of Strong Street.

Thomas Collins, a real estate appraiser and broker, testified that the proposed development would have a depreciating effect on the existing homes in the area. Basing his opinion on the existing character of the neighborhood, Collins stated that the highest and best use of the property would be along the lines of single-family residential but that the property would have a higher value under the R-4 classification than under an R-3. He further testified that the property could not be presently developed under the R-3 classification without sewer and water and he did not know the cost of putting sewer and water in the subdivision. The witness also stated that he had not made an independent investigation of the actual cost of improving the subdivision and had not appraised any of the properties belonging to the plaintiffs in the case.

Collins testified further that he was not sure as to what effect the Capri apartments had on the single-family homes adjacent to it. He was of the opinion that a six-flat would be more harmonious with the residential property than a factory. Further, Collins stated that it was his opinion that, if the remaining vacant lots other than the 47 lots were developed, an adverse effect would result with respect to the homes already in the area.

Ernest Zimmerman, a witness for plaintiffs, testified that he presently owned two homes in the area and had sold another home in 1968 for $20,000. The court sustained an objection to Zimmerman's testimony as to the present value of his house, stating that there was a lack of foundation questioning, the property owner was a plaintiff, and there was an absence of any particular showing that he had special knowledge and qualifications to testify as to values. Zimmerman conceded on cross-examination that the Capri apartments were not characteristic of a nice, country atmosphere.

Douglas Cargill, called as an adverse witness by plaintiffs, testified that he began acquiring the 47 rezoned lots in 1955 and had been purchasing

the lots since that time. The court sustained an objection to questioning regarding the prices paid by Cargill for the lots in question.

The defendants' zoning and planning expert was Rolf Campbell, who testified as to his opinion that the proposed development would be compatible with other uses in the area and that it was the highest and best use of the subject property from a zoning and planning standpoint. He stated that his opinion was based upon the suitability of the subject property for the proposed development, the fact that it would allow for the economic installation of sewer and water facilities, the trend of development in the area, and the economic returns to the property owners and the Village. The witness characterized Smigel's plan as a fine way to develop a problem piece of land and suggested that the traffic generated by the proposed development would be adequately handled by Strong Street without detrimental effects upon the adjacent property.

On cross-examination, Campbell admitted that he did not know if Smigel planned to install water and sewers on several streets but stated that the development of six-flats would permit existing property to receive water and sewer facilities, thereby improving health conditions. Further, Campbell testified that there was no demand for single-family homes in the area because the conditions in the subdivision were not conducive and there was an inability to obtain permits to build single-family homes. The witness also testified, on re-direct, that he thought the entire area should be rezoned as R-4 but that the Village was acting properly in rezoning the 47 lots as R-4.

Paul Spies, a consulting civil engineer, testified for defendants that the homes in the area were presently serviced by wells and septic systems and that there were no street improvements except on Strong Street. It was his recommendation that sewer and water be placed in the entire area. The witness further testified that he was familiar with Smigel's proposal and that it would include the installation of sanitary sewer throughout the subdivision. The cost of sewer and water under the proposed development, according to the witness, would be approximately $7,300 per lot.

Spies indicated, on cross-examination, that there were other ways to finance sewer and water besides special assessments, including bond issues. He also testified that it would cost less than $6,000 a lot to improve the area with sewer and water if all the lots had been included in arriving at the cost.

Ralph H. Martin, a real estate broker and appraiser, valued the homes in the area at between $10,000 and $32,000 and indicated that the highest and best use of the subject property was R-4. His opinion was based

on the fact that the area had not developed over the past 45 to 50 years. Further, the witness testified that, if the entire area were resubdivided, homes would have to be in the $25,000 to $30,000 price range and it would not be possible to produce homes for sale at that price.

Victor Smigel, one of the defendants and the developer of the property in question, testified on his own behalf. He indicated that he owned the 47 lots in question and planned a two-phase project for those lots. Further, Smigel testified that he planned to place sewer and water facilities in the area and also to provide streets, curbs and gutters. Mr. Smigel showed photographs of the buildings he proposed to erect in the area. According to Smigel, the total purchase price of the 47 lots is $560,000; he had already paid $50,000 toward the purchase of the properties and the balance is to be paid on a take-out basis. He testified that he had already expended $2,000 in architect's fees and $4,500 in engineering fees for the preparation of plans necessary to obtain building permits from the Village. Six building permits, received by Smigel from the Village, were introduced into evidence. On cross-examination, Smigel admitted that he owned only 30 of the lots in question but stated that he had a "verbal agreement" to purchase the remaining 17.

As a rebuttal witness, plaintiffs called Joseph Rains who testified that he had recently inspected homes in the Wheeling area with a view toward purchase but that he decided not to but when he learned of the rezoning. The court ruled that this was not proper rebuttal testimony relating to that of Rolf Campbell.

After the conclusion of the evidence, the court continued the matter to February 9, 1973, for decision. On that date, the Village asked leave to reopen the case and file an amendment to its answer within 45 days. Plaintiffs objected, and the case was then continued to February 28, 1973. On that date, the court indicated that it had already reached a decision on the merits of the case but would reserve its decision pending the motion of the Village. The case was then continued until March 12, 1973. The Village was granted another delay on March 12, 1973. On April 11, the court granted the Village leave to file an amendment to the answer. The amendment alleged that an ordinance had been passed by the Village, rezoning the entire area in question to R-4 multiple-family residential. On April 27, 1973, the court decided in favor of defendants and against plaintiffs, declaring that both zoning ordinances were valid. Further, the court specifically found that Smigel proposed to install sewer and water facilities, that the highest and best use of the land would be R-4 multiple-family zoning, and that the plaintiffs had failed to overcome by clear and convincing evidence the presumption of validity attaching to the ordinances.

■■■ The first question we shall consider is whether the trial court's decision was against the manifest weight of the evidence. It is a fundamental proposition of law that a zoning ordinance is presumed valid and the party challenging the validity of the classification has the burden of proving by clear and affirmative evidence that, as applied to him, it is arbitrary, unreasonable, and without substantial relation to the public health, morals, safety and welfare. (*Exchange National Bank v. Cook County* (1962), 25 Ill.2d 434, 439-40, 185 N.E.2d 250, 253; *Bennett v. City of Chicago* (1962), 24 Ill.2d 270, 273-74, 181 N.E.2d 96, 98; *Atkins v. County of Cook* (1960), 18 Ill.2d 287, 293, 163 N.E.2d 826, 830; *Forestview Homeowners Ass'n, Inc. v. County of Cook* (1974), 18 Ill. App.3d 230, 241, 309 N.E.2d 763, 771; *Hutson v. County of Cook* (1974), 17 Ill.App.3d 195, 203, 308 N.E.2d 65, 71.) Due to this presumption of validity, if it appears from all of the evidence that there is justification for a legitimate difference of opinion as to the reasonableness of the ordinance, the court will not substitute its judgment for that of the legislative body. *Urann v. Village of Hinsdale* (1964), 30 Ill.2d 170, 175, 195 N.E.2d 643, 646; *Exchange National Bank v. Cook County* (1962), 25 Ill.2d 434, 440, 185 N.E.2d 250, 253; *Mutz v. Village of Villa Park* (1967), 83 Ill.App.2d 1, 8, 226 N.E.2d 644, 647.

The Supreme Court of Illinois recently summarized the principles governing the validity of zoning ordinances in *La Salle National Bank v. City of Evanston* (1974), 57 Ill.2d 415, 312 N.E.2d 625. The court said at page 428:

"The law governing the disposition of contentions challenging zoning classifications has been set forth in numerous decisions. As stated in *Exchange National Bank of Chicago v. County of Cook*, 25 Ill.2d 434, 439-40, 'It is always presumed, in an attack upon an ordinance, that the enactment is valid, and the burden of proving its invalidity falls upon the one who attacks the ordinance. (*Jacobson v. City of Evanston*, 10 Ill.2d 61.) Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago*, 402 Ill. 321; *Morgan v. City of Chicago*, 370 Ill. 347.) Where it appears, from all the facts, that room exists for a difference of opinion con-

cerning the reasonableness of a classification, the legislative judgment must be conclusive. (*Krom v. City of Elmhurst*, 8 Ill.2d 104.)
 * * * ' "

■■ Although each zoning case must be decided on its own facts, the factors to be considered in determining the validity of an ordinance were set forth by the Supreme Court of Illinois in *La Salle National Bank v. County of Cook* (1957), 12 Ill.2d 40, 46-47, 145 N.E.2d 65, 69. Those standards are:

"(1) The existing uses and zoning of nearby property (*Krom v. City of Elmhurst*, 8 Ill.2d 104; *Forbes v. Hubbard*, 348 Ill. 166; *Langguth v. Village of Mount Prospect*, 5 Ill.2d 49), (2) the extent to which property values are diminished by the particular zoning restrictions (*Midland Electric Coal Corp. v. County of Knox*, 1 Ill.2d 200, 214; *Offner Electronics, Inc. v. Gerhardt*, 398 Ill. 265; *People ex rel. Kirby v. City of Rockford*, 363 Ill. 531; *Ehrlich v. Village of Wilmette*, 361 Ill. 213), (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public (*Chicago Title & Trust Co. v. Village of Franklin Park*, 4 Ill.2d 304, 306; *Krom v. City of Elmhurst*, 8 Ill.2d 104, 115; *Evanston Best & Co. v. Goodman*, 369 Ill. 207), (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner (*Hannifin Corp. v. City of Berwyn*, 1 Ill.2d 28, 36), (5) the suitability of the subject property for the zoned purposes * * * (*Langguth v. Village of Mount Prospect*, 5 Ill.2d 49, 54; *Petropoulos v. City of Chicago*, 5 Ill.2d 270, 274), and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. *Krom v. City of Elmhurst*, 8 Ill.2d 104, 111-113; *Chicago Title & Trust Co. v. Village of Franklin Park*, 4 Ill.2d 304; *Petropoulos v. City of Chicago*, 5 Ill.2d 270, 274."

■■ The paramount factor in determining the validity of a zoning ordinance is whether or not the classification is in conformity with surrounding existing uses. (*First National Bank v. County of Lake* (1955), 7 Ill. 2d 213, 228, 130 N.E.2d 267; *La Salle National Bank v. City of Chicago* (1955), 6 Ill.2d 22, 29, 126 N.E.2d 643, 646; *Manger v. City of Chicago* (1970), 121 Ill.App.2d 358, 367, 257 N.E.2d 473, 478.) On the question of the existing uses of nearby property in this case, plaintiffs' witnesses testified that the R-4 classification would increase the intensity of use and have an adverse effect upon the continued development of the area as a single-family neighborhood. Defendants' evidence showed that only about 30 percent of the area had been developed for single-family use

in the 50-year history of the subdivision, that the predominant use of the land rezoned was vacant, and that there was already considerable industrial and multi-family development in the area adjacent to the subdivision. The foregoing indicates that there are factors which point in both directions.

There was similar disagreement between the parties concerning the remaining standards applicable to the validity of zoning ordinances. With respect to the diminution of property values, Thomas Collins, a real estate appraiser and broker, testified for plaintiffs that the proposed development would have a depreciating effect on the existing homes in the area; defendants' witness, Ralph H. Martin, also a real estate broker and appraiser, testified that the proposed development would have an improving effect on the subdivision and would not affect the value of single-family homes already in existence. With respect to the suitability of the property for the zoned purposes, witnesses for both plaintiffs and defendants agreed that the existing R-1 zoning classification was unsuitable.

■■ After carefully considering all of the evidence presented in this case, it is our opinion that the plaintiffs' proof failed to overcome the presumption of validity but reveals at best a situation where room exists for a difference of opinion concerning the reasonableness of the R-4 classification. Therefore, the legislative judgment must be considered conclusive. (*Urann v. Village of Hinsdale* (1964), 30 Ill.2d 170, 175, 195 N.E.2d 643, 646; *Exchange National Bank v. Cook County* (1962), 25 Ill.2d 434, 441, 185 N.E.2d 250, 254; *Williams v. Village of Schiller Park* (1956), 9 Ill.2d 596, 598, 138 N.E.2d 500, 501.) In so ruling, we hold that the trial court's decision was not against the manifest weight of the evidence.

Secondly, plaintiffs contend that the trial court abused its discretion in failing to make a decision for almost 3 months and in allowing the defendant Village of Wheeling to reopen the case and file an amended answer. The trial court's action in granting the Village leave to file an amended answer was in accordance with the Civil Practice Act, which provides that amendments may be allowed on just and reasonable terms at any time prior to final judgment. (Ill. Rev. Stat. 1971, ch. 110, § 46.) The statute also provides:

> "This Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." Ill. Rev. Stat. 1971, ch. 110, § 4.

■■■ The allowance of amendments to pleadings is largely within the

sound discretion of the trial court (*Shockley v. Good* (1958), 13 Ill.2d 298, 305, 148 N.E.2d 763, 767; *Mangel & Co. v. Village of Wilmette* (1969), 115 Ill.App.2d 383, 397, 253 N.E.2d 9, 16), and its ruling will not be disturbed on review except in cases of clear abuse. (*Moneta v. Hoinacki* (1946), 394 Ill. 47, 59, 67 N.E.2d 204, 210; *Powers v. Sturm* (1973), 12 Ill.App.3d 346, 350, 297 N.E.2d 628, 631.) We hold that the trial court, in allowing the Village to reopen the case and file an amended answer, acted clearly within its discretion and find no abuse thereof.

Much of the argument presented by the plaintiffs during the course of the trial was directed to "spot zoning" because only a portion of the area had been reclassified. After the proofs had been closed but prior to the date set by the court for decision, the Village commenced proceedings to rezone the entire area to R-4. Notice was given to the court and to plaintiffs that a proposed amendment was pending, and defendants requested a delay in the proceedings until the Village resolved the matter before it. The court granted the delay, indicating its desire to avoid a piecemeal approach to the controversy. Subsequently, leave was granted to file an amended answer incorporating the provisions of the new ordinance. In our opinion, it was not improper for the court to reserve its judgment until the entire controversy was before it and then base its decision upon the zoning ordinance as it existed at the time of final judgment.

In *Bohan v. Village of Riverside* (1956), 9 Ill.2d 561, 138 N.E.2d 487, plaintiffs contested the validity of an amendment to a zoning ordinance which was technically defective in that the hearing and notice requirements of section 73—8 of the Revised Cities and Villages Act had not been complied with. Subsequent to the filing of the original complaint and without personal notice to the plaintiffs or the trial court, the village adopted a new ordinance which effected the same objective but corrected the technical defects of the prior one. The court found that the subsequent ordinance was lawfully passed and stated:

> "The mere pendency of a suit by plaintiffs does not affect the powers of a municipality to pass an ordinance or the manner of exercise of such power as prescribed by statute." (9 Ill.2d 561, 566.)

And, in *Ward v. Village of Elmwood Park* (1955), 8 Ill.App.2d 37, 130 N.E.2d 287, the defendant village passed an amendment to the ordinance on which the suit was brought during the pendency of the trial. The trial court decided that the prior ordinance was void and that the amended ordinance, introduced into the case by defendant's answer, was inapplicable to the plaintiffs' property. This court reversed and remanded

the cause. In discussing the decisive question of whether the court correctly declared the subsequent ordinance inapplicable to plaintiffs' property, the court said:

"We need not consider the ordinance in effect when the suit was filed. That ordinance was superseded by the ordinance of March 8, 1954, which was effective to regulate the use of plaintiffs' property. Plaintiffs had no vested right in the continuance of the earlier ordinance. *Fallon v. Illinois Commerce Commission*, 402 Ill. 516, 526." 8 Ill.App.2d 37, 39.

Plaintiffs argue that the trial judge should not have delayed its decision until the amended ordinance was passed in view of the authority of this court to examine the subsequent ordinance on review. They rely upon *Mangel & Co. v. Village of Wilmette* (1969), 115 Ill.App.2d 383, 253 N.E.2d 9, where the appellate court took judicial notice of a rezoning passed after trial but also found that the trial court did not abuse its discretion in refusing to allow plaintiff, a landowner, to amend his complaint and to reopen proofs so that additional evidence could be presented. This court stated, at page 397:

"The right to allow amendment is within the sound discretion of the trial court. The Civil Practice Act, Ill. Rev. Stats 1967, ch. 110, § 46, allows amendment before final judgment 'on just and reasonable terms.'

The trial court did not abuse its discretion in this regard. All of the evidence presented to the court concerned itself with a multiple-family residential use. The issue was the amount of density of that type of use. Then after closing its proof, plaintiff sought to present evidence on a totally different category, a specific commercial use. Plaintiff had never requested such a use from the Village. If the trial court had allowed such a reopening of proof it would have usurped the legislative process, and would have improperly constituted itself as a zoning authority. Bredberg v. City of Wheaton, 24 Ill.2d 612, 182 N.E.2d 742 (1962). The trial court's denial of plaintiff's request was proper."

In this case, the reopening of proof and amendment of the answer was sought by the Village in view of its consideration of a proposed amendment to the zoning ordinance which was the subject of this lawsuit. Unlike *Mangel*, the question of the usurpation of the legislative process clearly was not involved here, for the Village's authority to pass ordinances continued even though this cause was pending. Thus, *Mangel* is not authority for plaintiffs' contention that the trial court in the instant case abused its discretion in allowing the amendment.

Plaintiffs contend, as a further ground for reversal, that the trial court

erred in refusing to allow certain of them to testify as to the value of their property. The excluded testimony was that of plaintiffs' witnesses Sychowski, Ernest Zimmerman, and Maureen Pitt. Plaintiffs assert that one need not be an expert in the sale of real estate to testify as to property values and that the proffered witnesses were qualified to so testify even though they were inexperienced in the field of real estate valuation.

■■ We hold that the trial court's refusal to allow the testimony of these witnesses was not reversible error. The qualifications of witnesses to testify rest very largely in the discretion of the trial court. It has been held that a person who is acquainted with the property and has a knowledge of values is competent to give an opinion as to the fair market value of the property. (*Forest Preserve District v. Kercher* (1946), 394 Ill. 11, 20-21, 66 N.E.2d 873, 879; *People ex rel. McDonough v. Goldberg* (1933), 354 Ill. 423, 429, 188 N.E. 428, 430.) However, there must be some preliminary showing as to the factors upon which the opinion is based. *City of Chicago v. Central National Bank* (1955), 5 Ill.2d 164, 175, 125 N.E.2d 94, 100; *Buis v. Peabody Coal Co.* (1963), 41 Ill.App.2d 317, 326, 190 N.E.2d 507, 512.

In this case, the record indicates that the proferred testimony was not excluded merely because these were lay witnesses. Rather, there was an absence of a preliminary showing of the factors upon which their opinions as to valuation were based. With respect to the valuation testimony of plaintiffs' witness William Sychowski, the court sustained defendants' objection on the basis that the witness was not qualified to testify as a real estate expert. With respect to plaintiffs' witness Ernest Zimmerman, defense objections were sustained because foundation questions had not been asked at the time the court ruled. Similarly, with respect to the testimony of Maureen Pitt as to the effect that the rezoning would have on the value of her home, the court noted that it was not excluding her testimony because she was a lay witness, but that her testimony could be considered self-serving because she was a plaintiff in the case. Sychowski and Zimmerman were also plaintiffs in this cause.

■■ After carefully considering the record before us, we conclude that the overriding basis for the exclusion of the testimony of these witnesses as to value was that there was no foundation testimony to show the factors upon which their opinions were based. In view of the lack of preliminary to establish the qualifications of the witnesses as to the value of property, we hold that the trial court's refusal to allow their testimony was not an abuse of its discretion.

Finally, plaintiffs contend that the court erred in refusing to allow the rebuttal testimony of Joseph Rains as to the effect that the rezoning would have on single-family homes in the area. Rains testified that he

had recently inspected homes in the subject area with a view toward purchase. The defense objected on the ground that Rains' testimony did not rebut that of its planning and zoning consultant, Rolf Campbell. Plaintiffs explained, out of the presence of the witness, that Rains would testify that he had prepared a contract to purchase a home in the area but decided not to buy when he learned of the rezoning of the surrounding lots. The court sustained defendants' objection.

■■ We hold that the trial court's refusal to allow this rebuttal testimony was not reversible error and that Rains' inexpert opinion regarding his own behavior was not competent rebuttal testimony to the planning evidence given by Rolf Campbell. Campbell, testifying for defendants as a planning and zoning expert, stated that the rezoning would not have a detrimental effect on the single-family homes in the area. Rains was not offered as a planning expert witness but as merely one individual who had decided not to buy a house in the area when he learned of the rezoning. The defendants argued before the trial judge that they, too, could bring in other prospective purchasers to show that there was no adverse effect on the sale of single-family homes in the area. Had the trial court allowed the testimony of prospective purchasers offered by plaintiffs and defendants on the question of the desirability of single-family homes in the rezoned area, it may well have opened up a pandora's box of unmanageable proportions.

Moreover, we believe that the exclusion of Rains' testimony was not prejudicial to plaintiffs because the evidence sought to be introduced by his rebuttal testimony was already in the record. William Lawrence, a planning and zoning consultant, testified for plaintiffs in their case in chief that the rezoning would have an adverse effect on single-family homes in the area; and Thomas Collins, a real estate appraiser, testified as to the depreciating effect that the proposed development would have on single-family homes in the area. In reviewing judgments of a trial court, the object is not to determine whether the record is free from error but to ascertain whether a just conclusion has been reached in a trial at which no error occurred which might be prejudicial. (*Chicago Title & Trust Co. v. Village of Lombard* (1960), 19 Ill.2d 98, 108, 166 N.E.2d 41, 46.) In this case the excluded testimony was in the record in a trial before the court without a jury. Therefore, we find that the court's refusal to allow this rebuttal testimony was not reversible error.

In view of the foregoing, we hold that the trial court's decision was not against the manifest weight of the evidence; that the trial court did not abuse its discretion in delaying its decision and in allowing a defendant to reopen the case and file an amended answer; and, that no reversible error was committed in the trial court's refusal to allow certain

plaintiffs to testify as to the value of the property and to allow certain rebuttal testimony. The judgment of the circuit court is, therefore, affirmed.

DIERINGER and BURMAN, JJ., concur.