STATE FARM GENERAL INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellee, v. BEST IN THE WEST FOODS, INC., No. 2, d/b/a Super Buy Grocery, *et al.*, Defendants and Counterplaintiffs-Appellants (Frank J. Fakhouri *et al.*, Defendants).

First District (6th Division)    No. 1—94—2474

Opinion filed June 28, 1996.

Childress, Eshoo, Williams & Zdeb, of Chicago (Michael Childress and Edward Eshoo, Jr., of counsel), for appellants.

Frederick J. Sudekum III, John C. Cassidy, and Barbara Turotsy, all of Sudekum, Rosenberg & Cassidy, Chartered, of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

On July 4, 1988, at around noon, there was a natural gas explosion at a store operated by one of the defendants, Best in the West Foods, Inc., d/b/a Super Buy Grocery (Best Foods). Best Foods was an insured under a policy issued by the plaintiff, State Farm General Insurance Company (State Farm), for the period March 1, 1988, to March 1, 1989.

In January 1989, Best Foods provided State Farm with a proof of

loss, in which it requested $564,665 for the "contents" it lost and $297,763 for its loss of "earnings." On October 25, 1989, State Farm denied Best Foods' claim for these amounts under a policy provision that declared the policy void if an insured intentionally concealed or misrepresented a material fact relating to the insurance.

On January 10, 1990, State Farm filed a complaint for a declaratory judgment against the defendants. It alleged that Best Foods had made intentional misrepresentations of material fact in connection with its claim. It alleged that Best Foods had overstated the contents and earnings it lost as a result of the explosion and asked the court to declare that Best Foods was not entitled to coverage because the policy was void. On May 10, 1990, Best Foods filed a counterclaim against State Farm in which it alleged that State Farm had breached the insurance policy by denying its claim because Best Foods had complied with all of the terms and conditions of the policy.

After Best Foods completed its case during the bench trial on the complaint and counterclaim, State Farm filed a motion for a finding in its favor under section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 1992)). On April 8, 1994, the judge granted this motion and entered judgment for State Farm on its complaint and on Best Foods' counterclaim. Best Foods appeals this order and the judge's denial of its motion to vacate the April 8 order under section 2—1203 of the Code of Civil Procedure (735 ILCS 5/2—1203 (West 1992)).

The parties presented the following evidence. On October 29, 1987, Best Foods purchased the assets and inventory of Buy Rite Foods, a grocery store, and Roo-Pul Liquors, a liquor store, both located at 3948 West Roosevelt Road in Chicago. Best Foods, whose sole shareholder was Christos Stefos, began leasing these premises from defendants Frank and Odette Fakhouri. Best Foods' purchase of Buy Rite and Roo-Pul was financed in part through a loan from defendant First National Bank of Evergreen Park (First National), which was an additional insured under State Farm's policy with Best Foods. Best Foods began operating Super Buy Grocery at 3948 West Roosevelt on November 15, 1987. At the time of the explosion on July 4, 1988, section I of Best Foods' policy provided Best Foods with coverage for business personal property, such as inventory and equipment, and for loss of income. Section II of the policy covered Best Foods for business liability.

On July 5, 1988, when State Farm learned of Best Foods' claim, it hired Walter Churan, an independent adjustor with expertise in claims like Best Foods'. Other experts State Farm retained determined that the explosion at the grocery store was caused by a space

heater that fell from the ceiling and ruptured a gas line. On July 12, 1988, Best Foods hired Nemerowski, Kaplan & Radek, one of several public adjusting firms Churan recommended. Art Radek, a member of the firm, assisted Best Foods in adjusting its claim.

On September 23, 1988, State Farm received a partial proof of loss in which Best Foods requested $100,000. State Farm issued Best Foods a check for $100,000, which State Farm's claim superintendent David Armstrong described as an "advance payment" to help the insured with "any financial burdens they may have on the claim until the claim is finally resolved." According to Armstrong, State Farm was not suspicious that Best Foods' claim was overstated at the time it issued the $100,000 check. He explained that, at that time, the only documents State Farm had received in support of the claim were the partial proof of loss and a list Radek had provided to Churan with replacement and installation values of equipment lost in the explosion.

In December 1988, State Farm ended Churan's work on the Best Foods claim because it transferred the claim to its "Senior Referral Unit" (SRU), which handled labor-intensive investigations. According to Armstrong, the SRU was not a settlement unit.

On December 16, 1988, Dennis Schulkins, the superintendent of the SRU, sent a letter to Stefos requesting documentation of his claim. On January 24, 1989, State Farm received Best Foods' proof of loss, which Stefos had signed. At the time he submitted the proof of loss, Stefos also provided State Farm with financial documents for Best Foods. State Farm sent these documents to John Peters, an accountant whom State Farm hired in December 1988 to evaluate Best Foods' records and to identify the amounts in the proof of loss.

Peters provided State Farm with a report in February 1989, which indicated that Peters had found support for $300,000 of Best Foods' claim. In his report, he also suggested questions State Farm should ask Stefos at his examination under oath.

In March 1989, State Farm conducted an examination under oath of Raymond Sawyer, Best Foods' accountant, who maintained the books for Best Foods between November 1987 and July 1988. In March and May, State Farm conducted an examination of Stefos.

Peters reviewed the testimony in these examinations under oath and provided State Farm with a final report in August 1989. He explained in this report that he had determined from financial statements and his examination of testimony that $303,665 of the contents claim was a claim for lost inventory, and the remaining $261,000 was a claim for lost equipment. He concluded in this report that there was no documentation to support the claimed $303,665 inventory

loss, and the documentation and testimony supported an inventory value of only $150,000. He concluded that the claimed $261,000 equipment loss was also overstated and that the value of the lost equipment was no more than $151,026. Finally, Peters reported that Best Foods had no earnings loss claim because, based on Best Foods' financial history, it would have lost $364,059 in the year following the explosion and, therefore, saved money by not continuing in business.

After considering this report, the documentation Best Foods had submitted and the examination under oath testimony, Schulkins recommended that the claim be denied because Stefos had made material misrepresentations regarding lost earnings, the profitability of the store, the amount of inventory in the store and the amount of equipment in the store. On October 29, 1989, State Farm sent Stefos a letter informing him of its decision to deny his claim.

In count I of the declaratory judgment complaint, State Farm alleged that defendant Best Foods had made intentional misrepresentations of material fact in connection with its claim:

"a. BEST IN THE WEST claimed a loss of inventory in the amount of $303,665. The actual value of the inventory at the time of the loss was approximately $150,000.

b. BEST IN THE WEST submitted an actual cash value claim in the amount of $261,000 for equipment. The equipment claimed to be lost has an actual cash value of approximately $151,000.

c. BEST IN THE WEST further claimed to have purchased $110,000 worth of equipment during 1987 and 1988 which was supposed to have been dest[ro]yed by the fire and explosion. The insured did not purchase equipment of this value during those years.

d. BEST IN THE WEST submitted a claim for loss of earnings in the amount of $297,753 for the twelve month period following the loss. The actual loss of earnings for a twelve month period of suspension would be approximately [$364,000], a negative loss.

e. BEST IN THE WEST claimed it was a profitable business at the time of the fire. An analysis of the records revealed BEST IN THE WEST's business was not profitable but rather was loosing [sic] money at the time of the fire.

f. BEST IN THE WEST represented that sales were increasing prior to the fire. An analysis of its business records revealed that sales for BEST IN THE WEST were declining prior to the time of the fire.

g. BEST IN THE WEST represented that the business incurred numerous bank overdrafts due to the electrical 'blackouts'. An analysis of its business records revealed the cause of the bank

overdraft charges were not 'blackouts', but rather the deteriorating financial condition of BEST IN THE WEST."

Based on these allegations, State Farm asked the judge to declare that Best Foods and First National were not entitled to coverage under the policy because the policy was void under the concealment or fraud condition of the policy, which provided:

"This policy is void if, whether before or after a loss, any *insured* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." (Emphasis in original.)

Although count I contained allegations against First National, the judge dismissed First National from the suit in November 1991 when he granted First National's motion for summary judgment against State Farm. The remaining counts of the complaint are not at issue on appeal. They concerned the Fakhouris' rights under the policy and business liability coverage for the personal injury claims of other defendants.

Count I remained essentially the same in State Farm's amended complaints. In its first amended complaint, State Farm added three counts against Stefos and Best Foods, alleging fraud, breach of contract and unjust enrichment, but the judge dismissed these counts before trial. He gave State Farm permission to amend the counts concerning fraud and breach of contract, but the record contains no evidence that State Farm amended these counts after dismissal.

State Farm presented its witnesses first, and Best Foods presented its witnesses in response. Best Foods then rested, subject to calling Raymond Sawyer to lay a foundation for the admission of Best Foods' tax returns. As Sawyer was not ready to testify at this time, the judge permitted State Farm's rebuttal witnesses to testify before Sawyer.

After Sawyer's testimony, Best Foods rested again and the judge gave State Farm leave to file its section 2—1110 motion. At the hearing on this motion, the judge stated that he believed the motion was appropriate because the proof State Farm had presented in its case in chief would be the same it would present in defense of Best Foods' counterclaim. The parties agreed that the issues involved in the complaint and the counterclaim were the same. The judge stated, therefore, that, to avoid putting form over substance, he would consider the motion, even though section 2—1110 did not expressly provide that a plaintiff could make a motion under the section.

Best Foods argued that the judge should only consider the motion as to the counterclaim and should not consider the rebuttal witnesses in deciding the motion, but the judge granted State Farm's motion

and entered an order that stated he had ruled in favor of State Farm on the complaint and counterclaim.

On April 8, 1994, the judge granted Best Foods' motion to vacate this order and replace it with an order containing findings of fact and conclusions of law. In his order, the judge stated that the issues in the complaint and counterclaim were substantially the same. He found that, in the examinations under oath and the proof of loss, Best Foods had intentionally misrepresented material facts concerning the inventory, equipment and earnings it had lost as a result of the explosion. He denied Best Foods' motion to vacate this order.

■■ ■ Best Foods' first arguments on appeal concern the procedure by which the judge decided this case. It argues that the judge should not have allowed or granted State Farm's motion under section 2—1110, which provides:

"In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered. If the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, in which event the motion is waived." 735 ILCS 5/2—1110 (West 1992).

According to Best Foods, this provision does not allow a plaintiff to move for a judgment at the end of a defendant's case.

We are of the mind that too much has been made of this question. The only real question is whether the parties were given an opportunity to present all evidence to support their positions. Best Foods does not argue that its request to present evidence was circumscribed. We must assume, therefore, that the judge made his decision under a section 2—1110 motion after hearing all the evidence he would have heard at a completed trial.

It is unusual for the insurer to file a declaratory judgment action rather than wait for the insured to file a breach of contract action. The defendant's counterclaim was just that—a breach of contract claim. At the time the judge made his decision on the complaint, the trial was complete with respect to the complaint. Best Foods had completed its case, and State Farm had presented its rebuttal witnesses. Absent the section 2—1110 motion, it would have been proper for the judge to have rendered his decision on the complaint at this time because he had heard all the evidence the parties would have presented on the complaint. Although the judge's order indicates

that his decision on the complaint was pursuant to State Farm's section 2—1110 motion, we do not construe his decision as a finding under that section. We refuse to overturn a decision merely because the order states that it was pursuant to section 2—1110. See *In re Estate of La Rue*, 53 Ill. App. 2d 467, 203 N.E.2d 47 (1964).

■ Best Foods further argues that the procedure the judge employed in rendering his judgment was improper under section 2—1110 because he did not assess the credibility of witnesses or weigh their conflicting testimony. But the judge did assess the credibility of the witnesses and did weigh their conflicting testimony. The judge's comments during the trial and the hearing on the motion indicate that he in fact assessed Peters' and Koch's credibility and weighed their conflicting testimony. During the trial, the judge stated that he found Peters to be a "very forthright witness." He also stated that he found Peters to be "extremely competent and credible." At the hearing on the motion, the judge stated that he was not ignoring Koch's testimony, nor the testimony of any other witness, but was evaluating this testimony in relation to the "total surrounding claim."

The judge's comments during the hearing regarding the testimony of other witnesses also indicates that he assessed the credibility and weighed the testimony of all witnesses before him. For example, he stated that there was a grave question concerning Sawyer's credibility; that Radek's testimony concerned him; and that, "with regard to Mr. Sawyer, as with respect to all witnesses in this case, the Court has the duty and an obligation to appr[a]ise the credibility of the witnesses, to examine and watch their demeanor and to appr[a]ise the credibility of the witnesses." These comments indicate that the judge did assess the credibility of witnesses and weigh their testimony.

Best Foods also complains that the judge never made express findings regarding the credibility of Peters, Koch, Radek and Stefos. Best Foods, however, provides us with no authority to support its argument that express findings are necessary. To the contrary, there is authority that a judgment order need not contain the facts on which it is based. *Board of Education of the Kankakee School District No. III v. Kankakee Federation of Teachers Local No. 886*, 46 Ill. 2d 439, 264 N.E.2d 18 (1970); *Stony Island Church of Christ v. Stephens*, 54 Ill. App. 3d 662, 369 N.E.2d 1313 (1977).

Best Foods also argues that the judge erred by failing "to follow the proper procedure in ruling on State Farm's motion, in that [he] did not consider all of the evidence as to the value of the stock inventory." This assertion of error is based on the judge's refusal to allow Best Foods' store manager James Frank to testify that the store

could hold $300,000 of inventory. According to Best Foods, this violated the judge's obligation to weigh all of the evidence under section 2—1110. What the defendant is really arguing is that the judge made an erroneous ruling in refusing admission of certain evidence.

In order to properly address this argument, a description of the evidence the judge heard concerning the inventory claim is necessary. Stefos testified that the items he purchased from Buy Rite in October 1987 included $51,149.60 of inventory. An inventory conducted by Accurate Inventory (Accurate), an inventory company he retained, indicated that the value of the inventory in the store on December 20, 1987, was $125,000. According to Stefos, this inventory did not include dairy, meat, produce, and frozen food. There was approximately $25,000 to $30,000 of meat, $14,000 to $15,000 of produce, $5,000 to $6,000 of dairy and $25,000 to $30,000 of frozen food in the store at the time of the December inventory.

Best Foods' 1987 tax return showed that the inventory as of December 31, 1987, was $145,000. A financial statement dated February 29, 1988, indicated that the value of the inventory was $165,000. Sawyer, Stefos' accountant, had prepared the tax return and financial statement.

Stefos did not understand or review his tax return because he trusted Sawyer to do this. Stefos stated that he did not provide Sawyer with the $145,000 figure for the 1987 tax return. He only provided Sawyer with figures relating to the inventory values for different store departments, and he did not know how Sawyer arrived at the total inventory figures on the tax return or financial statements. Nevertheless, Stefos claimed that the $145,000 inventory figure on the 1987 tax return included only nonperishable goods that Best Foods had bought for the opening of the store. In addition, Stefos testified that the $165,000 figure on the February 1988 financial statement was inaccurate because it did not include the $51,149.60 of inventory Best Foods had purchased from Buy Rite.

Stefos did admit to providing Sawyer with the inventory figure for an August 1988 financial statement, which indicated that Best Foods had an inventory of $303,665. This figure was based on an inventory Stefos himself had performed in June 1988 before the explosion. Stefos denied, however, knowing the source of the $303,665 inventory figure on the proof of loss because Radek had prepared this document. He did know, however, that, of the $564,665 contents claim, $303,665 was for inventory.

Contrary to Stefos' testimony that he had performed an inventory in June 1988, Churan testified that Stefos told him a day or two after the loss that he could not remember the last time he had

performed a physical inventory of the store. Also contrary to Stefos' testimony that the December 1987 Accurate inventory did not include many portions of the store, Louise Vinson testified that the inventories Accurate had performed for Best Foods included everything in the store but produce. Vinson was an employee of Accurate and had participated in the inventories at Best Foods. She explained that the Accurate inventories included bread, dairy, frozen food, items in the back room and meat. From her inventory experience and her observation of the produce in Best Foods in December 1987, she estimated that there was $5,000 to $8,000 of produce in the store at the time of the December inventory.

Sawyer testified that he kept unaudited books for Best Foods, which meant that he did not verify the numbers Best Foods provided him. After the explosion, Sawyer prepared an unaudited financial statement, dated August 31, 1988, as part of an effort to reconstruct the Best Foods books, which were destroyed in the explosion.

The financial documents Sawyer prepared were based on documents he received from Best Foods and on conversations with Stefos. Letters attached to the financial statements Sawyer prepared for Best Foods indicated that the information contained in them was based on the representations of Best Foods and that Sawyer's office had not verified the information received.

Contrary to Stefos' testimony, Sawyer stated that the $145,000 inventory figure on the 1987 tax return included all goods in the Best Foods store and that this number was based on information Stefos had provided him from a physical inventory Sawyer believed Stefos had taken at the beginning of January 1988. Sawyer testified, however, that he realized an hour before testifying that the $145,000 figure was incorrect because it did not include the inventory Best Foods had purchased from Buy Rite. Sawyer also received the $303,665 inventory figure for the August 1988 financial statement from Stefos. Sawyer admitted that he had been convicted of felony income tax evasion in 1989 in connection with his personal income taxes.

Radek testified that the inventory figure on the proof of loss was based on a figure Stefos had provided him from an inventory he took shortly before the explosion. He verified this figure using the 1987 tax return and the August 1988 financial statement. The sales, purchase and inventory figures from these documents indicated that the inventory was approximately $323,000.

State Farm and Best Foods each presented the testimony of accountants they had hired to review the Best Foods claim. John Peters testified as an expert witness for State Farm and stated that he

believed the inventory portion of the proof of loss was overstated and the financial statements were false and misleading. He concluded that $303,665 of the $564,665 contents claim was inventory based on Sawyer's examination under oath, on Schulkins' deposition testimony concerning a conversation he had had with Stefos and on the August financial statement, which indicated that store equipment, the other portion of the contents claim, was $261,026. He believed that the inventory amount included in the contents section of the proof of loss was based on Best Foods' financial statements.

He concluded that the inventory claim was overstated because it was twice that of the inventory listed on the 1987 tax return and the February 1988 financial statement. In addition, the $145,000 figure on the 1987 tax return was supported by the December 1987 inventory Accurate performed. The Accurate inventory, which did not indicate that it was less than a complete inventory, showed that the value of the inventory at that time was only $125,000. Peters testified that the $303,665 inventory was inconsistent with Best Foods' negative bank balances, declining sales and declining purchases from its major supplier, Certified Foods.

John Koch testified as an expert witness for Best Foods. He was an accountant Best Foods hired in October 1991 to investigate its business income and inventory claim with State Farm. After reconstructing Best Foods' financial records by looking at cancelled checks, bank statements, industry statistics and sales tax returns, he determined that the inventory at the time of the explosion was between $286,195 and $303,665. He maintained that it was a coincidence that the upper limit of this range was the same as the amount reported on the proof of loss.

Koch determined that the financial documents Sawyer prepared were unreliable because of miscommunication between Sawyer and Stefos. He believed the $145,000 inventory figure on the 1987 tax return was unreliable because it would have resulted in a profit margin of only one quarter of one percent. Also, he believed the December 1987 Accurate inventory did not support this figure because it omitted many items in the store.

Koch criticized the industry statistics on which State Farm relied to determine that Best Foods' inventory was overstated. He explained that these statistics were for stores that were not comparable to Best Foods. He admitted, however, that his estimate of Best Foods' inventory was approximately $100,000 greater than some industry statistics for similar stores.

Based on this testimony, the judge found that, in the proof of loss and examinations under oath, Best Foods had misrepresented the

amount and value of inventory damaged in the explosion, that Best Foods had misrepresented that there was $303,665 in inventory in the store at the time of the explosion, and that State Farm's reliance on financial records to determine the value of the inventory claim was reasonable. At the hearing on the section 2—1110 motion, the judge stated that, when he looked at the totality of the evidence, there were too many discrepancies, including a very serious discrepancy concerning the inventory. Stefos' $303,665 figure was uncorroborated, and State Farm's figures suggested the inventory could not be that amount.

Best Foods argues that the judge's decision with respect to inventory was incorrect because he failed to consider certain testimony by Best Foods' store manager James Frank about inventory. Frank testified that he had been in the grocery store business for 38 years, including 30 to 33 as a manager. He had never participated in the inventories at Best Foods, but he ensured that groceries were properly stocked, and he placed orders for all items in the store except for meat and produce. He believed the store was "loaded" before the explosion. When Best Foods' attorney asked Frank how much the store could hold, State Farm's attorney objected on the basis that he was not an expert witness and had inadequate knowledge to give such an estimate because he had not participated in the inventory before the explosion. The judge sustained this objection.

The day after Frank testified, Best Foods' attorney informed the judge that he wanted to make an offer of proof concerning what Frank's response would have been to the question about how much the store would hold. State Farm's attorney objected on the basis that this offer of proof should have been made through testimony by the witness, but the judge allowed Best Foods' attorney to make the offer of proof by stating: "That it was Mr. Frank's opinion that the dollar amount of inventory that the Best In The West Foods No. 2 store could hold was approximately $300,000."

■ There is authority that the statement of counsel may be a valid offer of proof. *Clay v. McCarthy*, 73 Ill. App. 3d 462, 392 N.E.2d 693 (1979). Courts prefer offers of proof concerning testimony to be made through the testimony of a witness, however, and at least one court has held that an attorney should not make an offer of proof through his own statement when a witness is available to testify. *Mulhern v. Talk of the Town, Inc.*, 138 Ill. App. 3d 829, 486 N.E.2d 383 (1985). Whether courts will accept an offer of proof through the statement of an attorney depends on whether that offer is sufficiently specific. See, *e.g., Mulhern*, 138 Ill. App. 3d at 834; *Simon v. Plotkin*, 50 Ill. App. 3d 603, 365 N.E.2d 1022 (1977).

We think that the offer of proof in this case was sufficiently specific. We do not believe, however, that the judge erred in excluding Frank's testimony. Deciding whether to admit evidence is within the sound discretion of the trial judge, and a reviewing court will not overturn that decision absent a clear abuse of discretion. *Gill v. Foster*, 157 Ill. 2d 304, 626 N.E.2d 190 (1993).

■ The parties agree that Frank was not an expert witness. They disagree, however, on Frank's competency to give an opinion as to the value of the inventory the store could hold. The decision whether a witness is competent to testify is also within the discretion of the trial judge. *Tarala v. Village of Wheeling*, 25 Ill. App. 3d 349, 323 N.E.2d 454 (1974). A lay witness may give an opinion as to the value of property but only if he has sufficient personal knowledge of the property and its value. *Schultz v. Steinhagen*, 198 Ill. App. 3d 672, 555 N.E.2d 1267 (1990) (holding that a witness did not have sufficient personal knowledge to provide a value for the personal property in his apartment that his landlord had lost or destroyed). Before a court will admit the opinion of a lay witness concerning value, there must be an adequate showing of the factors on which this testimony is based. *Tarala*, 25 Ill. App. 3d at 361 (excluding testimony because of an inadequate showing of foundation).

It is not clear from Frank's testimony that his duties as a store manager provided him with an adequate basis to give an opinion as to the value of the inventory the store could hold. He had never participated in an inventory at Best Foods. In addition, although he may have gained some knowledge of the value and amount of goods in the store by placing orders for these goods, he did not have this knowledge with respect to all of the goods in the store because he did not place orders for meat or produce. Although the competency question in this case is close, we cannot conclude that the judge abused his discretion by finding Frank was incompetent to testify that the store could hold $300,000 of inventory.

Best Foods argues that Frank was qualified to testify under *Hill v. Ben Franklin Savings & Loan Ass'n*, 177 Ill. App. 3d 51, 531 N.E.2d 1089 (1988), and *Rittenhouse v. Tabor Grain Co.*, 203 Ill. App. 3d 639, 561 N.E.2d 264 (1990). In *Hill*, the court held that a landowner was competent to testify to the value of his land. *Hill*, 177 Ill. App. 3d at 57. In *Rittenhouse*, the court held that the president of a company was qualified to testify to the value of property damaged in an accident because of the knowledge of this property he had obtained through his employment. *Rittenhouse*, 203 Ill. App. 3d at 650.

Those cases are distinguishable from the one before us, however, because, unlike the landowner and the president of the company,

Frank was not sufficiently familiar with the value of the inventory to be competent to give an opinion on its value. Although the court in *Hill* stated that a landowner is generally competent to testify to the value of his land, this court recognized that this is not the rule where there are circumstances that indicate he is unfamiliar with the facts that give the property value. *Hill*, 177 Ill. App. 3d at 56. In this case, Frank's lack of participation in any inventory and lack of involvement in the ordering for some goods in the store indicate that he did not have sufficient knowledge to estimate an inventory value for the entire store. We cannot say, therefore, that the judge abused his discretion in refusing admission of Frank's opinion.

Even if we were to conclude that the judge erred in excluding Frank's testimony and that Best Foods properly preserved this error, we would not find reversible error. When there is an error on a ruling as to evidence in a civil trial, a reviewing court will not reverse the decision unless that error was substantially prejudicial and affected the outcome of the trial. *Argianis v. Chestler*, 259 Ill. App. 3d 926, 631 N.E.2d 1359 (1994). Frank's testimony that the store could hold $300,000 would have offered some corroboration for the $303,665 inventory figure on the proof of loss, but we do not think it would have changed the judge's decision.

Although Frank would have testified that the store could hold $300,000, it does not necessarily follow that there was inventory of this amount in the store at the time of the explosion. He testified that the store was "loaded" before the explosion but did not explain what this term meant. Furthermore, it is unlikely the judge would have placed much weight on Frank's testimony given his limited knowledge concerning the value of the inventory in the store. Even if the judge had considered Frank's testimony that the store could hold $300,000 worth of inventory, we believe that, based on the other evidence concerning inventory, the judge would have nevertheless found that Best Foods had misrepresented the value of the inventory in the store at the time of the explosion.

■ We, therefore, reject Best Foods' only assertion of error with respect to the inventory claim, the exclusion of Frank's testimony. Although Best Foods does not challenge the sufficiency of the evidence to support the judge's findings in relation to its inventory claim, we believe that the evidence was sufficient to support these findings. See *Watkins v. American Service Insurance Co.*, 260 Ill. App. 3d 1054, 631 N.E.2d 1349 (1994) (a manifest weight of the evidence standard applies to a judge's decision to deny a complaint after a bench trial). We conclude, therefore, that the judge properly found that Best Foods violated the concealment or fraud provision in the

insurance policy by making misrepresentations of material fact with respect to its inventory claim.

Best Foods contends that, even if we find it violated the concealment or fraud provision with respect to one portion of its claim under section I, which provided coverage for lost inventory, equipment and income, we may find coverage for the other portions of its section I claim. State Farm asserts, however, that Best Foods waived this argument by failing to assert the severability of section I in the trial court.

■ We note that Best Foods raised an issue of severability in the trial court through a motion for summary judgment, in which it argued that section I (property and income) and section II (business liability) of the policy were severable such that any fraud with respect to section I would not void coverage under section II. The judge granted this motion in favor of Best Foods. Our review of the record, however, indicates that at no time in the trial court did Best Foods argue that one portion of section I was severable from another portion of section I. We agree with State Farm, therefore, that Best Foods waived this issue on appeal. See *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 634 N.E.2d 1093 (1994). Consequently, our decision that the judge properly found misrepresentation with respect to Best Foods' inventory claim makes it unnecessary for us to consider Best Foods' arguments that he erred in finding misrepresentations with respect to Best Foods claims for lost equipment and income.

■ Given Best Foods' misrepresentations with respect to the inventory claim, the policy was void under the policy's concealment or fraud provision. The judge, therefore, properly entered judgment in favor of State Farm on its complaint and on Best Foods' counterclaim.

■ Finally, we address Best Foods' argument that the judge erred in entering judgment for State Farm because State Farm waived its right to rely on the concealment or fraud provision of the policy. Best Foods claims that State Farm waived this provision through conduct inconsistent with asserting the provision, such as paying Best Foods the $100,000 it requested in its partial proof of loss. State Farm asserts that it did not waive the concealment or fraud provision and that Best Foods waived its right to argue that it did because Best Foods never raised this issue in the trial court. Best Foods does not dispute that it failed to raise this issue in the trial court. We, therefore, consider it waived. See *Eagan*, 158 Ill. 2d at 534.

Even if Best Foods had raised the argument properly, its argument must fall. Waiver is the intentional relinquishment of a known

right. *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 631 N.E.2d 1292 (1994). That State Farm made an initial payment of $100,000 before it was aware of all of the facts does not establish waiver.

For these reasons, we believe that the judge did not err in entering judgment in favor of State Farm on its complaint and on Best Foods' counterclaim.

Judgment affirmed.

ZWICK, P.J., and McNAMARA, J., concur.