No. 2--01--1317

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

WAUSAU INSURANCE COMPANY, as ) Appeal from the Circuit Court

subrogee of The McCrone ) of Du Page County.

Group, Inc., )

)

Plaintiff-Appellee, )

)

v. ) No. 98--L--764

)

ALL CHICAGOLAND MOVING AND ) Honorable

STORAGE COMPANY, ) Kenneth L. Popejoy and

) Stephen J. Culliton,

Defendant-Appellant. ) Judges, Presiding.

________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Wausau Insurance Company (Wausau), initiated a subrogation action against All Chicagoland Moving & Storage Company (Chicagoland), alleging that Chicagoland dropped and damaged an electron microscope owned by the McCrone Group, Inc. (McCrone), and insured by Wausau.  Wausau's amended complaint alleged that Chicagoland acted negligently and breached a bailment agreement with McCrone.  The trial court granted Wausau summary judgment and awarded $90,500 in damages, and Chicagoland appeals.  We affirm the portion of the court's order granting Wausau summary judgment, but we reverse the award of $90,500 and remand the cause for a new determination of Wausau's damages.

FACTS

In June 1997, McCrone, a business which provides chemical analysis services, decided to replace a JEM200CX electron microscope (the microscope) with a more advanced microscope.  McCrone had originally purchased the old microscope from JEOL, the microscope's manufacturer, and intended to place the microscope with JEOL for resale.  JEOL contacted McDonald Moving & Storage (McDonald) to transport the microscope.  On June 26, 1997, McDonald retained Chicagoland to retrieve the microscope from McCrone's Westmont facility, deliver it to Chicagoland's Elmhurst warehouse, and await further instruction from McDonald.

Larry Illingworth, Jr., a Chicagoland employee, prepared a bill of lading and directed Mike Holt, an independent contractor, to retrieve the microscope and transport it to Chicagoland's Elmhurst warehouse.  The bill of lading identified Chicagoland's warehouse as the microscope's final destination.  On June 30, 1997, Holt transported the microscope without incident.  However, Kevin Illingworth, Chicagoland's warehouse manager, dropped and damaged the microscope while he and an assistant were repackaging it within Chicagoland's warehouse.

On appeal, Chicagoland contends that the damage occurred on the day Chicagoland accepted the microscope.  However Chicagoland's answer to the complaint states that the accident occurred two days later, "on or about July 2, 1997."  Chicagoland concedes that its agents dropped the microscope but insists that they were not negligent in doing so.

Before the accident, McCrone had purchased from Wausau an insurance policy that purportedly covered the microscope.  McCrone submitted a claim for the damaged microscope, and Wausau paid McCrone $90,250 after accounting for the $250 deductible.  Wausau's original and amended complaints each sought $90,500, which  allegedly represented the aggregate loss of the insurer and the insured.  After Wausau amended its complaint, the trial court permitted additional discovery but barred eight interrogatories and a deposition request submitted by Chicagoland that addressed Wausau's damages.  The trial court subsequently granted Wausau summary judgment on its subrogation claim against Chicagoland, and Chicagoland timely appeals.

ANALYSIS

In all appeals from the entry of summary judgment, we conduct a 
de
 
novo
 review of the evidence in the record.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).  Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1998); 
Bier v. Leanna Lakeside Property Ass'n
, 305 Ill. App. 3d 45, 50 (1999).  "Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party is clear and free from doubt."  
Bier
, 305 Ill. App. 3d at 50.  "Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact."  
Espinoza
, 165 Ill. 2d at 114.

If a party moving for summary judgment introduces facts that, if not contradicted, would entitle him to a judgment as a matter of law, the opposing party may not rely on his pleadings alone to raise issues of material fact.  
Hermes v. Fischer
, 226 Ill. App. 3d 820, 824 (1992).

In this case, Wausau and Chicagoland filed opposing motions for summary judgment to dispose of Wausau's subrogation claim, and the trial court ruled for Wausau.  Chicagoland asserts that questions of fact exist but nevertheless argues that it is entitled to summary judgment.  Chicagoland contends that (1) Wausau did not establish a 
prima
 
facie
 case of bailment; (2) Chicagoland exercised due care in handling the microscope; (3) Wausau's subrogation claim is barred because McCrone's insurance policy did not require Wausau to pay for the loss; (4) the damage award of $90,500 is not supported by competent evidence; (5) the bill of lading limited Chicagoland's liability to "$2 times the weight of the subject microscope in pounds"; and (6) the trial court abused its discretion in barring Chicagoland's discovery requests regarding Wausau's damages.

Subrogation has been defined as the substitution of another person in the place of a claimant whose rights he succeeds to in relation to the debt or claim asserted, which he has paid involuntarily.  
North American Insurance Co. v. Kemper National Insurance Co.
, 325 Ill. App. 3d 477, 481 (2001).  The right of subrogation may be grounded in equity or based on an express or implied agreement.  To establish its status as a subrogor, an insurer must prove that (1) a third party is primarily liable to the insured for the loss; (2) the insurer is secondarily liable to the insured for the loss pursuant to an insurance policy; and (3) the insurer paid the insured under the policy, thereby extinguishing the debt of the third party.  
North American
, 325 Ill. App. 3d at 481.  Chicagoland disputes whether Wausau established the first two elements of subrogation.

1. Chicagoland's Liability to Wausau

We initially consider whether Chicagoland is primarily liable to McCrone for the damage to the microscope.  The trial court decided that Wausau proved Chicagoland's liability by establishing a 
prima
 
facie
 case of bailment.  " 'A bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it.' "  
American Ambassador Casualty Co. v. Jackson
, 295 Ill. App. 3d 485, 490 (1998), quoting 
American Ambassador Casualty Co. v. City of Chicago
, 205 Ill. App. 3d 879, 881 (1990).  To recover under a bailment theory, a plaintiff must establish (1) an express or implied agreement to create a bailment; (2) a delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition.  
Jackson
, 295 Ill. App. 3d at 490.

A 
prima
 
facie
 case of bailment creates a rebuttable presumption that the defendant acted negligently.  
Jackson
, 295 Ill. App. 3d at 490.  A bailee for hire must exercise reasonable care under the circumstances, but he is not an insurer of the bailed property.  
Ortiz v. Warren Chevrolet, Inc.
, 24 Ill. App. 3d 199, 202 (1974).  Whether a bailee has met the burden of showing that damage to the bailed property occurred without the bailee's fault is ordinarily a question of fact for the trier of fact.  
Ortiz
, 24 Ill. App. 3d at 202.  However, even though the question is ordinarily a question of fact, a question of law that may be dispensed with by summary judgment is presented if only one conclusion may be drawn from the undisputed facts.  
Reynolds v. Decatur Memorial Hospital
, 277 Ill. App. 3d 80, 84 (1996).

Chicagoland concedes that it accepted the microscope at McCrone's Westmont facility pursuant to the bill of lading and that it returned the microscope in damaged condition.  Therefore, the existence of the first, third, and fourth elements of bailment is undisputed.  However, Chicagoland argues that a question of fact exists as to whether McCrone tendered the property in good condition.  We agree with Wausau that the second and fourth elements of bailment can be established by evidence that the bailee returned the property in worse condition than when the bailor tendered it.

Wausau's amended complaint alleges that "[a]t the time CHICAGOLAND picked up McCrone's microscope, the microscope was not damaged, was operable, and was otherwise in good condition."  In its answer to this particular allegation, Chicagoland stated that "on or about June 30, 1997, the subject microscope was in apparent good order and condition at the time [Chicagoland] picked it up from a location in Westmont."  Moreover, Donald Brooks, McCrone's owner and president, stated in an affidavit that the microscope was "in good operating condition immediately prior to the microscope being dropped."

On appeal, Chicagoland ignores its admission and instead relies upon its document entitled "Electronic Descriptive Inventory," which Holt prepared when he accepted the disassembled microscope from McCrone.  In the form, Holt noted that McCrone had packaged the microscope and that the "contents and condition [were] unknown."  Chicagoland also argues that Brooks was unqualified to comment on the microscope's condition because he did not operate it and because other McCrone employees were more familiar with it.  Chicagoland presumes that the microscope was not in good condition because McCrone believed it was "old technology" and intended to sell it.

A judicial admission is a deliberate, clear, unequivocal statement of a party, about a concrete fact, within the party's peculiar knowledge.  It is well settled that the party making the admission is bound by that admission and cannot contradict it.  A judicial admission will support a grant of summary judgment.  
Eidson v. Audrey's CTL, Inc.
, 251 Ill. App. 3d 193, 195-96 (1993). 

In its answer, Chicagoland stated that the microscope was in "apparent good *** condition" when it was accepted.  Brooks stated that, although he was not an expert in electron microscopy, he knew that the microscope operated before Chicagoland dropped it.  Holt's "Electronic Descriptive Inventory" merely asserts that the microscope's external casing was scratched and that the condition of the microscope was otherwise "unknown."  The inventory form does not refute Brooks's affidavit, and no one disputes that McCrone intended to sell the microscope because it was obsolete, not because it was broken.  Most importantly, Chicagoland concedes on appeal that the microscope was in worse condition after it "came in contact with the floor" of Chicagoland's warehouse.  Chicagoland may not rely upon a novel appellate argument to contradict its prior admission, Wausau's pleadings, and Brooks's affidavit.  Therefore, we conclude that Wausau established a 
prima
 
facie
 case of bailment and created a rebuttable presumption that Chicagoland acted negligently when it dropped the microscope.

We next address Chicagoland's contention that it exercised due care in handling the microscope.  Chicagoland relies exclusively upon a supplemental affidavit in which Kevin Illingworth described in detail the equipment and procedures he used when moving the microscope.  Illingworth opined that he and his assistant were "in compliance with the custom and practice in the shipping industry" when they dropped the main column of the microscope.  We need not consider the conclusory portion of Illingworth's affidavit because Supreme Court Rule 191(a) states that an affidavit supporting a summary judgment motion "shall not consist of conclusions but of facts admissible in evidence."  See Official Reports Advance Sheet No. 8 (April 17, 2002), R. 191(a), eff. July 1, 2002.

Furthermore, Illingworth admitted that he read JEOL's moving instructions before he dropped the microscope.  The instructions directed Illingworth to contact JEOL if he had any questions about moving the microscope and cautioned that the microscope's main column is "extremely heavy and can tip very easily."  Chicagoland  contends that the instructions were inadequate but concedes that Illingworth did not contact JEOL or McCrone before moving the microscope.  Chicagoland does not allege that McCrone negligently packaged the microscope or that any intervening force contributed to the accident.  Under these undisputed facts, we conclude that the trial court correctly decided that Chicagoland did not present evidence to rebut the presumption that it acted negligently in dropping the microscope.

2. Wausau's Liability to McCrone

We next address whether the insurance policy rendered Wausau secondarily liable to McCrone.  Chicagoland argues that it is entitled to summary judgment because McCrone's insurance policy did not require Wausau to pay for the loss.  The construction of an insurance policy is a matter of law subject to 
de
 
novo
 review.  To ascertain the meaning of the policy and the intent of the parties, a court must construe the policy as a whole considering the risk undertaken, the subject matter that is insured, and the purposes of the entire policy.  The terms of the policy must be read according to their plain and ordinary meaning, and the court should not search for an ambiguity where there is none.  
Commonwealth Edison Co. v. National Union Fire Insurance Co.
, 323 Ill. App. 3d 970, 986 (2001).

McCrone's "Building and Personal Property" insurance policy provides in relevant part:

"A. Coverage.

We will pay for direct physical loss or damage to Covered Property at [McCrone's Westmont facility] caused by or resulting from any Covered Cause of Loss.

1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section A.1, and limited in A.2, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

* * *

b.  Your Business Personal Property located in or on the [Westmont facility] or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property Separation of Coverage form:

(2) Machinery and equipment;

(3) 'Stock';

* * *

5.  Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the [Westmont facility] or in the open (or in a vehicle) within 100 feet of the described premises.

* * *

d.  Property Off-Premises

You may extend the insurance provided by this Coverage Form to apply to your Covered Property, other than 'stock,' that is temporarily at a location you do not own, lease or operate. *** The most we will pay for loss or damage under this Extension is $10,000."

The building and personal property policy defines "stock" as "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping."  A related policy section labeled "Business Income Coverage Form" further defines "finished stock" as "stock [McCrone] has manufactured."

McCrone purchased an additional "Match Guard Enhancement Cover," which provides in relevant part:

"1. The BUILDING AND PERSONAL PROPERTY COVERAGE FORM *** is modified as follows:

* * *

F. Property Off-Premises.

1. Provisions 5.d. Property Off-Premises is amended to read:

You may extend the insurance provided by this coverage form to apply to Your Covered Property other than "stock," or contractor or mobile equipment that is temporarily at a location that you do not own, lease or operate.

* * *

The most We will pay for loss or damage under this Extension is: *** $100,000 for all other Covered Property; and $100,000 in any one occurrence."

The commercial property conditions section of the insurance policy provides that "[i]f any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment."

We conclude that the plain language of the building and personal property policy provided coverage for "machinery and equipment" at McCrone's Westmont facility but limited coverage to $10,000 for property damaged at a location that McCrone did not own, lease, or operate.  McCrone purchased the match guard enhancement, which increased the coverage to $100,000 for covered property, other than "stock," that was damaged at a location other than McCrone's Westmont facility.

Chicagoland argues that the microscope is excluded from coverage as "stock" under the policy because McCrone intended to sell it.  We disagree.  The building and personal property policy defines stock in part as "merchandise held in storage or for sale."  The policy does not define "merchandise," but the term commonly means "the commodities or goods that are bought and sold in business."  Webster's Third New International Dictionary 1413 (1993).

There is no dispute that McCrone is a business that ordinarily renders chemical analysis services.  McCrone is not in the business of manufacturing or selling microscopes or any other technical equipment, and the planned microscope sale was designed to dispose of obsolete technology.  Moreover, the policy defines "stock" to include raw materials and distinguishes "finished stock" as stock that has completed a manufacturing process.  We agree with Wausau that the microscope is not a fungible commodity under the facts of this case.  Therefore, we conclude that the microscope is not "stock," which is excluded under the policy.  It is better characterized as "equipment or machinery," which is covered under the match guard enhancement.

In the trial court, Wausau argued that only the transportation coverage provisions, which extend coverage to certain property that is "in transit," covered the damaged microscope; the trial court agreed.  On appeal, however, the parties apparently agree that the transportation coverage provisions do not confer coverage because the microscope was "in storage" at Chicagland's warehouse at the time of the accident.

Chicagoland argues that Wausau may not now rely upon the match guard enhancement in arguing that the microscope is covered.  However, Wausau's prior interpretation of the provisions is not a factual admission that would preclude it from now arguing that other sections of the policy confer coverage.  Moreover, any waiver of the issue is a limitation on Wausau and not this court (
Geise v. Phoenix Co. of Chicago, Inc.
, 159 Ill. 2d 507, 514 (1994)); we must pursue a just result and the maintenance of a sound and uniform body of precedent that may sometimes override the considerations of waiver that stem from the adversary character of our system (
Jackson Jordan, Inc. v. Leydig, Voit & Mayer
, 158 Ill. 2d 240, 251 (1994)).  The transportation coverage provisions merely extend coverage to items while they are in transit; they do not exclude the microscope from coverage under other sections of the policy.  Accordingly, we reject Chicagoland's assertion that, because the transportation coverage provisions do not apply, the underlying building and personal property and match guard enhancement provisions do not cover the microscope.

Chicagoland cites 
American National Bank & Trust Co. of Chicago v. Weyerhaeuser Co.
, 692 F.2d 455, 460 (7th Cir. 1982), for the proposition that the subrogation claim is barred because Wausau  paid McCrone's claim voluntarily.  "Subrogation which is grounded in equity and applied as a matter of law is typically denominated 'legal' subrogation.  On the other hand, subrogation that is founded upon an express or implied agreement (
e.g.
, on an insurance contract where the insurer is subrogated to any recovery for injuries received directly from a tortfeasor) is termed 'conventional' subrogation."  
Weyerhaeuser
, 692 F.2d at 460 n.12.  "Various equitable principles, such as the denial of subrogation to a volunteer or to a subrogee who has not paid the claim in full, are not applicable to conventional subrogation."  
Weyerhaeuser
, 692 F.2d at 460 n.12.

The equitable rule barring subrogation to a volunteer does not apply here because the insurance policy expressly transferred McCrone's right of recovery to Wausau.  Brooks, McCrone's president, acknowledged this transfer by executing a release and subrogation receipt for Wausau when he received payment.  Therefore, we agree with Wausau that it is irrelevant whether the insurer paid the claim voluntarily.  We further note that Wausau advanced the policy favoring the prompt payment of insurance claims when it paid McCrone's claim without first litigating the parties' rights under the policy.

3. Wausau's Damages

Chicagoland alternatively argues that, if Chicagoland is liable, Wausau failed to prove its damages.  We agree.  In its motion for summary judgment, Wausau relied upon (1) the affidavit of Kathy Greenlee, a Wausau claims adjuster, and (2) Brooks's answer to an interrogatory.  In opposition to the summary judgment motion, Chicagoland offered an October 14, 1997, letter from one of Wausau's consultants to a potential microscope buyer.  The letter stated that a JEOL JEM200CX microscope, which is the same model at issue in this case, was available for $65,000.  Although the microscope was offered for sale "as is," the purchase price included any repairs necessary to "make the system operational."

Greenlee stated in her affidavit that "the total amount paid as a result of the claim is $90,500."  However, Wausau concedes on appeal that "Greenlee has no personal knowledge of how her company determined the value of the microscope" because she was assigned to the case after McCrone's claim was processed.  Rule 191(a) provides that "[a]ffidavits in support of and in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants."  See Official Reports Advance Sheet No. 8 (April 17, 2002), R. 191(a), eff. July 1, 2002.  Therefore, Wausau may not rely upon Greenlee's affidavit to prove its damages.

In Wausau's answer to one of Chicagoland's interrogatories, Brooks stated as follows:

"[Wausau] states that its damages were calculated as follows: the microscope in question was purchased from JEOL in 1983 for the price of $230,992.00 (after applying discounts and trade-in allowances).  The microscope was in good operating condition immediately prior to the event described in [the complaint].  The microscope was damaged beyond repair as a result of its being dropped by [Chicagoland].  
The fair market value of the microscope immediately prior to its being dropped was $90,500.00.  This figure was arrived at by conferring with JEOL, the manufacturer of the microscope, who opined that the fair market value of the microscope was $95,200.00.
 *** This information is consistent with what Mr. Brooks believed the microscope to be worth as McCrone was going to place the microscope for sale at a price of $120,000.00.  [Wausau] is unaware of any salvage value to [
sic
] this microscope after it was broken."  (Emphasis added.)

In arguing that Brooks, as the owner of the microscope, could testify to its value, Wausau relies exclusively upon 
American National Bank & Trust Co. v. City of North Chicago
, 155 Ill. App. 3d 970 (1987).  In 
American
, the plaintiff alleged that the defendants negligently demolished a building, and the trial court barred the valuation testimony of the general contractor who owned the building.  This court reversed, holding that a person's status as an owner of real property qualifies him to opine on the value of the property unless the party opposing the testimony shows that the owner does not know basic information about the property such as the price paid for it, the income received from it, and its potential uses.  
American
, 155 Ill. App. 3d at 973.  Although the case apparently supports Wausau's contention that Brooks's valuation of the property is adequate, 
American
 involved real property rather than personal property, such as the microscope in this case.  Several other cases discuss the evidentiary valuation rules that apply to personal property (see, 
e.g.
, 
State Farm v. Best in the West Foods, Inc.
, 282 Ill. App. 3d 470 (1996)), and we admonish the parties for their failure to cite this relevant authority.

It is well settled that a lay witness may give an opinion as to the value of personal property only if he has sufficient personal knowledge of the property and its value.  Before a court will admit the valuation opinion of a lay witness, there must be an adequate showing of the factors on which he bases his testimony.  
Best in the West
, 282 Ill. App. 3d at 483.  In 
Best in the West
, a natural gas explosion destroyed the defendant's grocery store, and the plaintiff denied coverage under the defendant's insurance policy.  At the jury trial, the court barred the store manager from testifying to the value of the inventory that his store could hold.  Acknowledging that the competency question was close, this court affirmed the exclusion, noting that the manager had never participated in the inventory process at the store and had not placed orders for all the types of goods that the store carried.  
Best in the West
, 282 Ill. App. 3d at 483.

Like the store manager in 
Best in the West
, Brooks based his valuation on information outside his personal knowledge.  Brooks stated that the damages estimation was based on the opinion of unidentified JEOL employees, and Wausau did not provide deposition testimony or an affidavit from any JEOL employee who had personal knowledge of the value of the microscope before and after the accident.  Like Greenlee's affidavit, Brooks's interrogatory answer violates Rule 191(a) because it relies upon the opinions of others.  We conclude that the trial court committed reversible error when it based the $90,500 award on these documents.

Furthermore, Chicagoland created a question of material fact on the damages issue when it introduced evidence that a potentially comparable microscope was on sale for only $65,000.  We also note that Brooks stated he was "unaware" of whether the microscope had any salvage value, but it is undisputed that only the separately packaged main column of the microscope was dropped.  The remaining parts of the microscope were not damaged, and they presumably have some value, which should be ascertained on remand. We next consider whether the bill of lading limits Wausau's potential damages from Chicagoland.  McDonald agreed to pay Chicagoland to pick up the microscope at McCrone's Westmont facility and deliver it to Chicagoland's Elmhurst warehouse on June 30, 1997.  Chicagoland prepared a bill of lading that incorporated by reference the loading instructions and a transportation order prepared by JEOL.  In the transportation order, JEOL directed Chicagoland to "crate and hold [the microscope at the warehouse] until further notice."  The bill of lading purportedly limited Chicagoland's liability to "A MAXIMUM VALUE EQUAL TO $2.00 TIMES THE WEIGHT OF THE SHIPMENT IN POUNDS."

Chicagoland apparently concedes that McCrone is a third-party beneficiary under McDonald's shipping agreement.  Chicagoland then argues that, if we decide Wausau is McCrone's subrogee, Wausau is bound by McDonald's agreement with Chicagoland.  
C.f.
, 
Draper v. Frontier Insurance Co.
, 265 Ill. App. 3d 739, 743 (1994) (a third-party beneficiary to a contract has no greater rights than the party under which the third-party claims).  Chicagoland contends that, because the bill of lading incorporated the JEOL moving instructions and directed Chicagoland to hold the microscope indefinitely, the bill of lading limited Chicagoland's liability at the time Chicagoland dropped the microscope.  We disagree.

Larry Illingworth, Sr., of Chicagoland admitted in a deposition that Chicagoland billed McDonald an additional $198 to store the microscope for one month starting on June 30, 1997, the day it arrived at Chicagoland's warehouse.  Chicagoland further admits that it billed separately for the transportation and storage services and that it was not hired to transport the microscope anywhere after it reached the warehouse.  Although the bill of lading directed Chicagoland to hold the microscope "until further notice," the undisputed facts reveal that Chicagoland dropped the microscope two days after the one-month storage period began.  Therefore, we conclude that the bill of lading, including the damages limitation, ceased to operate as a contract after Holt tendered the microscope to Chicagoland at its warehouse.  The storage agreement, rather than the bill of lading, governed the parties' relationship, and Chicagoland does not contend that the storage agreement limited its liability.

4. Discovery Matters

Because the issues will likely arise on remand, we next address whether the trial court erred in (1) striking Chicagoland's interrogatories regarding damages and (2) denying Chicagoland leave to depose Lori Wegner, Wausau's former claims adjuster who processed McCrone's claim.  Chicagoland argues that the proposed discovery was necessary after Wausau amended its complaint because the original complaint alleged a conventional breach of contract and the amended complaint presented new theories of bailment and third-party breach of contract.  Wausau responds that the court did not abuse its discretion because Wausau alleged the same damages in both the original and amended complaints.

A trial court has broad discretion in deciding discovery matters, but orders restricting discovery will be reversed as an abuse of that discretion if they prevent the ascertainment of truth or substantially affect an issue in the case.  
Fidelity & Casualty Co. v. Mobay Chemical Corp.
, 252 Ill. App. 3d 992, 1001 (1992).  In this case, the trial court decided the damages issue after erroneously considering Greenlee's affidavit and Brooks's interrogatory answer.  The court adopted their valuations of the microscope even though each relied on information outside her or his personal knowledge.  We acknowledge that Chicagoland could have submitted the discovery requests sooner, but the record reveals that the damages issue is a fact question that should not have been decided based on one party's unsupported hearsay evidence.  It appears that, even though she no longer works for Wausau, Wegner is most familiar with McCrone's claim, and we conclude that the court abused its discretion when it declined Chicagoland's request to depose her.  On remand, both Chicagoland and Wausau are entitled to reasonable discovery, including depositions and interrogatories, on the damages issue.

CONCLUSION

For the reasons stated, the portion of the trial court's order granting Wausau summary judgment is affirmed, the portion of the order awarding Wausau $90,500 in damages is reversed, and the cause is remanded with directions.

Affirmed in part and reversed in part; cause remanded with directions.

McLAREN and KAPALA, JJ., concur.